## WILLIAM H. BARKER vs. BOSTON ELECTRIC LIGHT COMPANY.

Suffolk.   November 15, 1900. — April 8, 1901.

Present: HOLMES, C. J., KNOWLTON, BARKER, HAMMOND, & LORING, JJ.

In an action by a lineman in the Boston fire alarm department against an electric lighting company, to recover for injuries caused by a wire of the defendant upon a pole of the defendant which the plaintiff was climbing for the purpose of repairing a fire alarm wire, it appeared, that the pole was in a reservoir lot placed there by the defendant with the permission of the water department of Boston, that the lower cross bar on the pole was used for the wires of the defendant and the upper cross bar belonged to the city of Boston and had two fire alarm wires attached to it. The evidence tended to show, that there was a general interchangeable use by the defendant and the fire alarm department each of the poles and fixtures of the other, that in every case the party desiring to make use of a pole of the other not in a public street would apply for a permit and that nothing ever was paid by either party to the other for such permit or use. It did not appear to what extent, if any, applications by either party to the other were refused, save that the city had in some cases imposed restrictions. Except as above there was no evidence of any contract or agreement between the city and the defendant as to the interchangeable use above mentioned or as to this particular pole. *Held*, that a jury would be warranted in finding that there was a general understanding and agreement between the parties that each should use the poles of the other and that the permits from time to time were granted in pursuance of such an agreement, and, if so, the plaintiff in going upon the pole was not a mere licensee, but the defendant was bound to use reasonable care for the protection of those members of the fire alarm department who had occasion to go upon the pole. *Held, also,* that whether the defendant was negligent as against the plaintiff, and whether the plaintiff was in the exercise of due care or assumed the risks, were questions for the jury.

Whether a violation of the provisions of St. 1890, c. 404, § 1, by insufficient insulation of an electric wire at the point of attachment to its support, gives a person injured by such wire a right of action by virtue of the statute, *quære.*

TORT by a lineman in the Boston fire alarm department to recover for personal injuries alleged to have been caused by his receiving a shock from an electric light wire belonging to and controlled by the defendant upon a pole of the defendant which the plaintiff was climbing for the purpose of repairing a fire alarm wire.   Writ dated July 15, 1898.

The declaration as amended contained two counts.   The first count, setting forth the facts, alleged that the plaintiff was in the employ of the city of Boston and went upon the pole in the

discharge of his duties and while rightfully there and in the exercise of due care was injured by reason of the improper and negligent manner in which the electric wire and the arm to which it was attached were maintained by the defendant. The second count contained the additional allegation, that the injury occurred on account of the defective and insufficient insulation of the defendant's wire at the point of attachment to the support, as required by St. 1890, c. 404, § 1.

At the trial in the Superior Court, before *Braley,* J., the case principally turned upon the question whether the plaintiff was a mere licensee or whether the defendant was bound to use reasonable care for the protection of those members of the fire alarm department who had occasion to go upon the pole.

The evidence upon this point is fully stated in the opinion of the court. At the close of the evidence on both sides, the defendant requested a ruling, that upon all the evidence the plaintiff could not recover, and the judge so ruled and directed the jury to return a verdict for the defendant. The jury returned a verdict as directed ; and the plaintiff alleged exceptions.

*R. F. Sturgis,* for the plaintiff.

*C. A. Snow,* for the defendant.

HAMMOND, J. At the time of the accident the plaintiff was lawfully upon a pole owned by the defendant, and the main question is whether, being there as an employee of the fire alarm department of the city of Boston, he was a mere licensee.

The pole was the fifth of a line of five poles belonging to the defendant, all located upon the reservoir lot owned by the city of Boston and abutting on a public way called White Street in that part of the city called East Boston. The poles were. just within the fence separating the sidewalk of the street from the reservoir lot, and were erected in July, 1886, by the Citizens Electric Light Company, the predecessor in title of the defendant, in pursuance of a license from the water board of the city, which reads as follows: " Voted that the petition of the Citizens Electric Light Company for permission to locate poles on the edge of the Reservoir lot in East Boston be granted, in accordance with the recommendation of the Engineer."

The defendant is a corporation engaged in the manufacture and supply of electricity for light and power throughout the

city, and for its transmission and distribution maintains lines of wires of which some are attached to cross arms upon poles in the public streets, some are carried in conduits under streets, some are attached to various kinds of support on roofs of buildings, and in a few instances some, as in this case, are attached to poles erected upon property of the city. In 1890 the defendant became the owner of all the poles and lines of wires of the Citizens Electric Light Company, and has ever since maintained them. Upon this fifth pole there were two arms or cross bars each about five feet long. To the lower arm which belonged to the defendant were attached its wires with certain insulating contrivances. The wires came from the other four poles upon the reservoir lot to this pole, and then ran obliquely across White Street to an arm belonging to the defendant company and attached to a pole of the fire alarm department, which was placed in the sidewalk of the street. Ever since it became the owner of the pole the defendant has maintained the cross bar and the wires attached in the manner above stated without objection from the city or any of its agents.

The upper arm of the pole belonged to the city of Boston, having been placed there in December, 1887, by the fire alarm department, and to it were attached two fire alarm wires. These wires came across from the other side of White Street to this arm, and from there led down to two hooks on a small cross piece below the cross bar of the defendant, and from these hooks passed into a lead pipe and through the pipe to a fire alarm box affixed to the pole and projecting over the top of the street fence, so that a person standing upon the sidewalk could use the box. This short cross piece, the lead pipe and the box, all belonged to the fire department, and had been attached by it to the pole. The above arrangement of the wires, cross bar, small cross piece, lead pipe and box had existed and had been used by the fire alarm department ever since December, 1887, without objection from the defendant, so far as appeared. The wires of each party were so affixed to the cross bars and pole as not to touch or interfere with the wires of the other in their usual and intended position.

The Citizens Electric Light Company, referred to above, was organized December 4, 1885, and acquired the property in East

Boston of the Union Electric Light and Power Company, a Maine corporation, which was the first company to erect electric light poles and fixtures in East Boston.

Subject to the defendant's exception the plaintiff put in evidence three separate orders of the mayor and aldermen of the city, dated respectively June 24, 1884, December 8, 1886, and November 13, 1888, granting permission to the defendant or its predecessors in title to erect poles for the support of wires in certain public streets, therein respectively named, in East Boston. The aggregate number of poles authorized by these orders was two hundred and thirty-one, and each order contained the following condition : " Also, upon condition that any department of this city shall have the exclusive use of the upper cross bar and top of each pole free of cost, for the purpose of placing wires thereon." The plaintiff also introduced in evidence an ordinance of the city passed in 1890, which has been in force ever since, providing that the superintendent of streets, when thereto authorized by an order of the board of aldermen, should issue permits to persons to open and occupy portions of the streets for the purpose of placing and maintaining poles therein for the support of wires ; that the grantee of such permit should allow the departments of the city the exclusive use of the upper cross bar and top of each pole, free from all charge, for the purpose of placing wires thereon, and should not suffer or permit any person to place or keep wires upon its poles or fixtures without permission first obtained in writing from the board of aldermen. It was conceded that these three orders and the ordinance applied only to poles in the public streets.

One Mills, an employee of the defendant and called by it, stated on cross-examination that as respects poles to be erected in the streets the fire alarm people as a rule did not put their arm on a pole before it was set, but " a gain is left in the top of the defendant company's poles for the fire alarm people, as a general thing, every time a pole is set; that in every pole set there is a mortise cut in the pole for a fire alarm arm, and that is what it is intended for, and that is true of nearly all the poles that are set." He further stated that only a very few poles of the defendant company are on private land.

The plaintiff testified that he was familiar with the use of

poles and fixtures of different companies, and that prior to the accident and since, he had seen wires of the defendant company attached to roof standards owned by the city and run by the fire alarm department, and also upon poles of the fire department in the streets.

Without going further into detail it is sufficient to say that the evidence tended to show that the defendant had many more structures, especially upon buildings, than the fire alarm department; that there was a general interchangeable use by the defendant and the fire alarm department, each, of the poles and fixtures of the other, and that this use was not confined to poles set in the streets; that in each individual case the party desiring to make use of a pole of the other would apply for a permit covering that case, except that the fire alarm department did not ask permission to use a pole of the defendant set in the public street; and that nothing was ever paid by either party to the other for such permits or use. It did not appear to what extent, if any, applications by either party to the other for permits were refused, save that the city had in some cases imposed restrictions.

As to this particular pole no witness could recollect any application for permission to put the fire alarm wires upon it, but the superintendent of that department testified that when he found that he needed to attach the department wires to a pole it was his custom to ask the company's permission to put the wires there, and that he had no recollection about this pole; he supposed that he followed his usual custom with respect to it. He further testified that he had no recollection that he or his department had anything to do with the setting of this particular pole; that "he did not know anything, and had no reason to know, about what permission, if any, was obtained by the said company for the setting of the poles upon the land or premises of other city departments than his own, and that so far as the water board was concerned, he had no reason to know why, or how, or under what conditions, if any, in what form or manner, they granted permits for the use of their property for the setting of poles," and that he had nothing to do directly or indirectly with the granting of a license by the water board for the setting of this pole or any of these poles on the reservoir lot.

When asked whether or not his department was in any way consulted about it before it was done, he replied " that he was not clear as to that; that he was requested to move his box around from the section where it was formerly placed over on the other side of the reservoir lot, but that he did not know whether this was at the time the water board granted permission for the setting up of this pole or afterwards; and that they were also requested to take up the pole that they had around on the other side, and that he was perfectly willing to do it because it shortened the loop, and that that was all he knew about it."

Except as above stated, there was no evidence of any contract or agreement between the city and the defendant as to the interchangeable use above mentioned, or as to this particular pole.

What may be inferred fairly and legally from this evidence? Is it sufficient to warrant a finding that the right of the city to the use of the pole for its fire alarm department was something more than that of a mere licensee, and so understood by the parties?

So far as respects poles in the public streets it is clear that from the first the defendant and its predecessors in title accepted and acted upon permits to erect poles granted upon the condition that the city departments should have the exclusive use of the upper cross bar and top free of cost; and that to this end the poles were made with a mortise therein to receive this cross bar for such use. As to any such pole the company erected it under the condition that the city should use a part of it, and the pole was fitted for that purpose; and there can be no doubt that when the city comes to such a pole it comes not as a mere licensee but under a claim of right to which the company assents. It is to be noted, however, that the pole upon which the accident occurred was not in the public street but upon the private property of the city, and that the permit to erect it was granted not by the board of aldermen of the city acting as public officers under the statutes, but by the water board acting not as public officers but as the agents of the city. The permission under which the defendant uses this pole is the permission of the owner of the land, and in this respect the city stands like any private landowner. It can revoke the permit at any time if there be no contract or agreement express or implied to

the contrary. The vote of the water board was merely to the effect that the petition to locate poles be granted. It does not appear why these five poles which were placed upon the reservoir lot were not placed in the street close adjoining. They were erected in July, 1886, and in December, 1887, the wires and box of the fire alarm department were changed to one of them. Upon this pole from and after that time were wires of the company which came from the other poles upon the lot and crossed over to an arm of the defendant company attached to a pole of the city controlled by the fire alarm department and placed in the sidewalk of a public street; and there were wires of the fire alarm department which came from across the street. At the time the pole in question was erected, the policy of reserving the upper part for the fire alarm department had been begun, and the company which erected this pole had acted upon permits granted in accordance with that policy, and the evidence would warrant the inference that when this pole was put up it had the mortise in it for the upper cross arm afterwards placed upon it by the city.

It is true that permits were asked by each party of the other, except in the case where the city desired to use a pole of the company set in the public street, but we cannot consider that fact as decisively showing merely an interchange of courtesies, as contended by the counsel for the defendant. Considering the conditions annexed to the permissions granted to the defendant and its predecessors in title as to poles erected in the public streets, the facts that the policy of annexing such conditions had been adopted by the public authorities and that such permits had been received and acted upon by the grantee for some time before the vote of the water board as to the pole in question; that this pole was erected upon the private land of the city and was revocable at any time; that there is evidence warranting the inference that the mortise for the upper arm was upon the pole when it was erected; that in about eighteen months the city began to use it and has ever since continued such use; that the wires upon the pole are connected with the general systems of the defendant and of the fire alarm department; that there has been an interchangeable use by each party of the poles of the other, not only upon the public streets but

elsewhere, and especially upon this reservoir lot owned by the city ; that no money ever was paid by either party to the other for this interchangeable use, and that no request to use a pole is shown ever to have been refused, we think that a jury, although not so compelled, nevertheless would be warranted in finding that there was a general understanding and agreement between the parties that each should use the poles of the other, and that while no money was paid to or by either to the other for such use, yet the consideration received by each is found in the right to a similar use of the poles of the other and in the nature of the right granted to erect the poles, and that the permits from time to time were not granted as interchanges of courtesies but in pursuance of such an agreement, and that the pole in question came within the scope of this agreement. We think therefore that the question whether the plaintiff was merely a licensee or not should have been submitted to the jury.

If the jury should find for the plaintiff as to these facts then the defendant was bound to use reasonable care for the protection of those members of the fire alarm department who had occasion to go upon the pole. *Illingsworth* v. *Boston Electric Light Co*. 161 Mass. 583.

The questions whether the defendant was negligent as against the plaintiff, and whether the latter was in the exercise of due care or assumed the risks, were also questions for the jury.

As the case must go back for a new trial, it does not seem necessary in the absence of any demurrer to the second count to decide in advance whether it is a statutory count, and if so whether it is maintainable as such. The issue of another trial may be such as to render that question immaterial.

*Exceptions sustained.*