FREDERICK N. LORD *vs.* INHABITANTS OF WAKEFIELD.

Middlesex.   November 18, 1903. — February 27, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & BRALEY, JJ.

*Negligence*, Employers' liability. *Municipal Corporations. Electric Light Company.*

In an action, under St. 1891, c. 370, § 16, against a town operating an electric light plant, for injuries due to the fall of a pole on which the plaintiff was at work under the direction of the defendant's superintendent, it appeared, that the plaintiff, although he had worked for the defendant for several years as a trimmer of arc lights and a general helper about the electrical works, was not an experienced lineman, and was ordered by the defendant's superintendent to go up the pole in question and cut the wires, that the plaintiff after cutting two wires, felt the pole

tremble, and said to the superintendent "Don't you think you had better guy this pole?", that the superintendent replied "The pole is all right; cut them down," and that the plaintiff cut the wires and the pole fell, causing the injuries. The pole had been set eleven years before and was rotten at the base, although the outside was apparently sound. There was nothing to show that the plaintiff knew that the life of a pole was limited or that this pole was an old one. *Held*, that the plaintiff did not necessarily assume the risk of the pole falling, that it was the duty of the superintendent to inspect the pole, and that the jury might find that the plaintiff, although apprehensive of danger if the pole was not guyed, was justified in yielding his judgment to that of his superior and obeying the command, and therefore that it was error to order a verdict for the defendant, and the case should have been submitted to the jury.

*Semble*, that an experienced lineman sent without a superintendent to remove wires from a particular pole has no right to assume that the pole is sound, and as a matter of precaution should inspect the pole for himself.

LATHROP, J.  This is an action of tort, with a count at common law and several counts under the St. of 1887, c. 270, and the amendments thereof, for personal injury sustained by the plaintiff while in the employ of the defendant.  At the trial in the Superior Court at the close of the plaintiff's evidence, a verdict was ordered for the defendant, and the case comes before us on the plaintiff's exceptions, with a full report of the evidence. The evidence is set forth at unnecessary length, and the facts in the case may be briefly stated.  The defendant was a municipal corporation, engaged in the manufacture and distribution of electricity for lighting purposes, under the St. of 1891, c. 370. Under § 16 of this act it was liable for any injury or damage to persons or property, "happening or arising by reason of the maintenance or operation of the same, in the same manner and to the same extent as though the same were owned and operated by an individual or private corporation."  See R. L. c. 34, § 28.

The plaintiff had been in the defendant's employ at two different periods for four years and nine months.  During that time he had worked as a trimmer, by which we understand a trimmer of arc lights, and had also been a general helper about the electrical works.  He had set poles, helped string wires, and had put transformers on poles.

On the day of the accident, June 18, 1901, some wires were to be cut to allow a church, which was to be moved, to pass between two poles.  One Weare, the superintendent in charge of the wires and all outside work, was sent by the manager of the plant with the plaintiff and a fellow servant to attend to the

cutting of the wires. Weare went up the pole to look after some fire alarm wires which had fallen across the pole. Soon after, Weare ordered the plaintiff to go up the pole and cut the wires. This pole was about twenty-five feet high, and was set in 1890. In obedience to the order of Weare, the plaintiff went up the pole, and with one leg over the cross arm, and the other leg on a step of the pole, cut two of the wires. The plaintiff then felt the pole tremble, and saw the other wires sag. He then said to Weare, who was standing at the foot of the pole, "Don't you think you had better guy this pole?" Weare replied, "The pole is all right; cut them down." The plaintiff then cut the wires, the pole fell, and the plaintiff was injured. The pole had entirely rotted away below the ground, and, though the outside was apparently sound, the pole was rotten for some distance above the ground.

The defendant does not contend that the plaintiff was not in the exercise of due care, nor that there was not evidence of negligence on the part of the defendant; and no question is made of Weare being a superintendent. The contention is that the fall of the pole was one of the risks which the plaintiff assumed ; and that the defendant owed him no duty to inspect the pole.

But the answer to this contention is that the plaintiff was acting under the direct and immediate control of the superintendent. The risk was not an obvious one, and the plaintiff might treat the language of the superintendent as an assurance from one who knew better than he did that he could work there in safety. *Mahoney* v. *Bay State Pink Granite Co.* 184 Mass. 287, and cases cited.

The defendant relies principally upon the cases of *McIsaac* v. *Northampton Electric Lighting Co.* 172 Mass. 89, and *Tanner* v. *New York, New Haven, & Hartford Railroad,* 180 Mass. 572. We are however of opinion that the case before us is distinguishable from each of these cases. In *McIsaac* v. *Northampton Electric Lighting Co.* the plaintiff was an experienced lineman, and was sent off alone to remove two wires from one pole to another. He attempted to do the work in his own way, and was injured by the fall of the pole, owing to its rottenness below the ground. The plaintiff in that case knew that the life of a pole was limited, and that any pole after a time would become unsafe. In

the case before us the plaintiff was not an experienced lineman. He was not sent off alone, but under the care and guidance of a superintendent, who was to give the orders, and whose orders he obeyed. There is nothing in the evidence to show that the plaintiff knew that the life of a pole was limited, or that the pole was an old one. It may be impracticable for an electric lighting company to have a long line of poles constantly inspected, so that an experienced workman, sent by himself to remove wires from a particular pole, has no right to assume that the pole is sound, and should, as a matter of precaution, inspect the pole for himself, there being no difficulty in ascertaining whether any particular pole is rotten or not; but, in a case like the present, we are of opinion that it was the duty of the superintendent to inspect the pole, as he must have known that when the wires were cut the pole would fall, unless the pole was sound, and its condition was readily ascertainable.

In *Tanner* v. *New York, New Haven, & Hartford Railroad,* 180 Mass. 572, the plaintiff was an experienced lineman, and was set to work with others, under a superintendent, to remove wires from a number of old poles to new ones. The plaintiff knew that the pole was an old one, and knew the tendency of poles which had been set for a long time to rot beneath the surface of the ground. After he had thrown off the wires, they fell across a wire guy which connected the pole with a fence. The plaintiff told the superintendent that the wires were crossed on the guy, and asked him what he should do about it. The superintendent told him to cut it, and the pole fell. The court in its opinion says: " His question to the overseer was not whether it would be safe for him to cut the guy, and it could not be found fairly that the order was intended to be an expression that it was safe to cut it, or that the plaintiff had a right to interpret the order as such an expression." The court further says: " It was not a case in which the act of setting the workman to do a particular thing in a particular place might be understood fairly by the workman to be an assertion that the place was safe." In the present case, as we have already said, the plaintiff was not an experienced lineman, and he was set to work to do a particular thing in a particular place, under the supervision of a superior who knew the fact that he was not an experienced lineman.

While the conversation shows that the plaintiff was apprehensive of danger if the pole was not guyed, yet we are of opinion that it was a case where the jury could find that he might well yield his judgment to that of his superior, and obey the command. *McKee* v. *Tourtellotte*, 167 Mass. 69, 71.

In this view of the case, it becomes unnecessary to consider the construction to be given to the provision of the St. of 1899, c. 337, § 1, which provides: "Every person or corporation, private or municipal, owning or operating a line of wires over or under streets or buildings in a town, shall use only strong and proper wires safely attached to strong and sufficient supports, and insulated at all points of attachment." The portion of the section quoted is in substance the same as the St. of 1890, c. 404, § 1, except that the earlier statute applied only to wires over streets in a city, while the later applies to wires over or under streets in a town. In *Illingsworth* v. *Boston Electric Light Co.* 161 Mass. 583, Chief Justice Field, in delivering the opinion of the court, left it undecided whether it was the intention of the St. of 1890, c. 404, to give a private person a cause of action for any violation of the first section of the statute, if, in consequence of such violation, he suffers damage in his person or property.* No such question arises here, for the right of action is given by the St. of 1891, c. 370, § 16.

*Exceptions sustained.*

*S. K. Hamilton,* (*T. Eaton* with him,) for the plaintiff.
*J. Lowell & J. A. Lowell,* for the defendant.

---

* The same point was left undecided in *Barker* v. *Boston Electric Light Co.* 178 Mass. 503, 504, 510.