JAMES DAWSON *vs.* LAWRENCE GAS LIGHT COMPANY.

Essex.    March 15, 1905. — June 22, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

. *Negligence*, Employer's liability.

A lamp trimmer employed to clean electric lights who never has worked as a line-
    man and has had nothing to do with the erection or care of the poles does not
    assume the risk of an injury from the fall of a pole while he is on it caused by
    the pole being rotten below the surface of the ground.

LATHROP, J.   This is an action of tort for personal injuries
from the fall of a pole erected by the defendant for the support
of wires and an electric arc lamp.   The declaration contains
two counts under the R. L. c. 106, § 71, and one at common law.
While the pleadings are referred to in the bill of exceptions, no
question is made in regard to them.

It appeared in evidence that the pole was of hard pine,
squared, about twenty-eight feet high ; and, in the spring before
the accident, it had been painted by the employees of the de-
fendant from the surface of the ground to the top.   It was pro-
vided with iron spikes or bolts inserted upon alternate sides of
the pole for climbing.   It had one arm extending into the street,
but the electric light was placed on the top.   Two electric wires
ran from it to poles on the other side of the street.

The accident happened on July 9, 1903.   At this time the
plaintiff was forty-one years of age, and weighed about one hun-
dred and seventy-five pounds.   The plaintiff entered the employ
of the defendant in September, 1902.   Before this he had had
no experience in this kind of work.   He was employed as a lamp
trimmer and his work was each day to clean the electric lamps,
remove the old carbons and insert new ones.   He was shown his
work and what he had to do.   About one month before the ac-
cident, his route was increased, so that twenty-nine more poles,
one of which was the pole that fell, were added to his route.
The plaintiff had in all something over fifty poles to look after,
but out of these there were only eighteen that he had to climb.

On the rest of the poles the lamps could be lowered by means of a rope.

Upon the day of the accident he ascended the pole in question, by placing a ladder against it and then climbing up upon the iron bolts or spikes until he got to the top. Then there was a crash and the pole fell, and the plaintiff was thrown to the sidewalk and sustained the injuries complained of. The plaintiff had ascended the pole in the same way every day for about a month before the accident, had never seen anything the matter with the pole, or anything to call his attention to it, and never had been instructed to report any defect or trouble with the pole.

The plaintiff testified that at the time of the accident there were five or six linemen in the employ of the defendant; that the linemen erected and took down the poles and strung the wires; that he had nothing to do with their erection or care; that he never had worked as a lineman or painted any poles; and that his duties were as previously stated. It appeared that the pole was not guyed.

Several witnesses were called as to the condition of the pole immediately after the accident. They all agreed that it was rotten below the surface of the ground. Some placed the rotten spot at two or three inches below the surface, and some at five or six inches.

One Sargent, the superintendent of the defendant, called as a witness by the plaintiff, testified on direct examination that there were six or seven linemen in the employ of the defendant, whose duty it was to erect and take down poles, to string the wires and paint the poles; that the poles were not painted at any set time but when they needed it; that they were painted from the surface of the ground to the top, the intention being to cover all that was exposed to the weather; that the linemen were provided with small poles with steel points at one end, which could be and were used for the purpose of determining whether the electric light poles were in good condition; that it was the duty of the linemen to examine the poles and see their condition; that this can be done by prodding at the bottom of the poles, and that their condition can be detected by prodding down into the ground if it is not too far down, and that he did not think

that five or six inches below the surface of the sidewalk was too far down.

On cross-examination the witness testified that the pole was a square hard pine pole ; that he did not know what its life was, but knew that it had a life and ought to be inspected once in a while ; that he did not know how often the poles of the defendant were inspected at the time of the accident ; that there was no special time for the examination of poles, and no special interval between examinations.

The defendant introduced no evidence, and at the close of the plaintiff's testimony asked the judge to rule that there was no evidence which would authorize the jury to find for the plaintiff, and also asked that the judge direct a verdict for the defendant. The judge refused both of these rulings. The case was submitted to the jury under instructions, which were not otherwise excepted to, and the jury found for the plaintiff.

The contention of the defendant is that the danger of the pole falling was an obvious one; that the plaintiff assumed the risk ; and that there was no evidence which would warrant the jury in finding that the defendant was negligent.

The defendant relies upon the case of *McIsaac* v. *Northampton Electric Lighting Co.* 172 Mass. 89, and *Tanner* v. *New York, New Haven, & Hartford Railroad*, 180 Mass. 572. These were cases of experienced linemen, as has been already pointed out in *Lord* v. *Wakefield*, 185 Mass. 214, 216, 217. In the present case, the plaintiff was not a lineman, but a cleaner of lamps. It was no part of his duty to inspect the poles. This duty the defendant had delegated to its linemen, as appears from the testimony of the superintendent of the defendant company. It was the duty of the defendant to furnish a safe place for the plaintiff to work; and the duty of inspection which the defendant recognized could not by being delegated relieve the defendant from liability. There was no obvious risk which the plaintiff assumed. The danger was under ground. There was no evidence that the plaintiff knew that the life of a pole was limited. The superintendent knew this fact, but testified that he did not know what the life of this pole was, " but knew that it had a life, and ought to be inspected once in a while."

We are of opinion therefore that the defendant's requests for

instructions were rightly refused, and the case was properly submitted to the jury. *Chisholm* v. *New England Telephone & Telegraph Co.* 185 Mass. 82.

*Exceptions overruled.*

*J. G. Walsh*, for the defendant.
*J. P. Sweeney*, for the plaintiff.