### ROBERT WHITTAKER *vs.* GEORGE W. BENT.

Suffolk.   January 13, 1897. — February 25, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Personal Injuries — Master and Servant — Action — Employers' Liability Act.*

The temporary dampness of moulds in a foundry, which can be ascertained only at the moment of setting them up, and which causes an explosion when melted iron is poured into them, injuring the servant engaged in the act, is not a defect in the machinery of the foundry which will sustain an action against the master for the injury, either at common law or under the employers' liability act, St. 1887, c. 270.

The dampness of moulds in a foundry, which were set up by a superintendent, caused an explosion when melted iron was poured into them, injuring the servant engaged in the act. He asked the superintendent if the moulds were all right, and the latter replied, "Yes, go ahead, Bob." *Held*, in an action for the injury, that the superintendent was not, in either instance, "exercising superintendence," within the meaning of the employers' liability act, St. 1887, c. 270, so as to render the master liable for his negligence.

TORT, for personal injuries occasioned to the plaintiff while in the defendant's employ. Trial in the Superior Court, before

*Bond*, J., who directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions.   The facts appear in the opinion.

*C. E. Washburn*, for the plaintiff.

*A. Hemenway*, (*J. F. Wiggin* with him,) for the defendant.

HOLMES, J.   This is an action for personal injuries caused by the explosion of some melted iron which the plaintiff was pouring into a mould in the defendant's foundry where the plaintiff worked.   The iron blew out because the mould was damp.   The declaration contains three counts, one at common law for defective machinery, and two on the St. 1887, c. 270, alleging defects in the condition of the ways, works, and machinery, and negligence of a person exercising superintendence.   The dampness of the moulds could be ascertained only at the moment when they were set up.   If they were damp, it was the duty of the man who set them up to have them dried at the forge, or to wipe them out with a rag, and oil and blacklead them.   The liability of the moulds to be damp was well known.   The cause of the dampness complained of is questionable and not material.   At the time of the accident the moulds had been set up by a man whom we assume for the purposes of decision to have been a superintendent.   According to the plaintiff's testimony he asked this man if the moulds were all right, and received the answer, " Yes, go ahead, Bob."   The judge before whom the case was tried directed a verdict for the defendant.

We are of opinion that the direction was right.   The temporary dampness of the moulds was not a defective condition of the machinery, within the meaning of the statute or the rules of the common law.   *Lynch* v. *Allyn*, 160 Mass. 248, 252, 253. There was no personal obligation on the part of the defendant to have the moulds inspected for dampness.   The moulds were small and numerous, the danger transitory, and any further inspection than that necessarily left to the plaintiff's fellow servants would have been impracticable.   See *Garragan* v. *Fall River Iron Works Co.* 158 Mass. 596.   The absolute obligation of an employer to see that due care is used to provide safe appliances for his workmen is not extended to all the passing risks which arise from short lived causes.   *McCann* v. *Kennedy*, *ante*, 23. See also *Johnson* v. *Boston Tow-Boat Co.* 135 Mass. 209; *Moyni-*

*han* v. *Hills Co.* 146 Mass. 586, 592, 593; *Bjbjian* v. *Woonsocket Rubber Co.* 164 Mass. 214, 219. In a case like the present, where the danger is recurring, no doubt there may be a duty to give a general warning to look out for it. But that the plaintiff did not need. In setting up the mould, the superintendent was not exercising superintendence. *Cashman* v. *Chase*, 156 Mass. 342. It is argued that, assuming this to be so, he did exercise it in what he said to the plaintiff, according to a distinction pointed out in *Kalleck* v. *Deering*, 161 Mass. 469, 470. See also *Wild* v. *Waygood*, [1892] 1 Q. B. 783. But we think that the answer, "Yes, go ahead," was not the direction of a superior, but merely the assurance, in a customary colloquial form, of the fellow workman who had inspected the mould, that all was safe. A doubt might be raised as to the effect of a previous statement by the plaintiff that the foreman gave him a ladle of iron to pour, which looks at first like a direction to do what the foreman ought to have known to be dangerous. But it appears from the context that it means only that the foreman that morning was doing the manual work of filling the ladles, and handed one to the plaintiff. It was part of the plaintiff's regular business to pour. *Exceptions overruled.*