WILLIAM McKINNON *vs.* RITER-CONLEY MANUFACTURING
COMPANY.

Middlesex.    November 19, 1903. —`June 22, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & BRALEY, JJ.

*Negligence*, Employer's liability.

If a workman is set at work picking up rivets from the ground between two cir-
cular concentric iron shells of a gasometer in process of construction while men
are at work on stagings above him riveting in place the iron plates that are to
form the shells, and if this workman goes to a superintendent, tells him that the
work is dangerous and that he does not care to get injured, and asks him if he
will not let him do the work at night or on Sunday, and the superintendent says
that that cannot be as he wants the rivets to use immediately and says " You go
back to work and I will take care of you ", and if the workman going back to
work in the course of a few minutes is struck on the head by a falling object and
injured, the superintendent in the meantime having given no directions and done
nothing for the workman's protection, the workman, in an action against his
employer constructing the gasometer, has a right to go to the jury on the
questions of his due care, his assumption of the risk and the negligence of the
superintendent.

TORT for personal injuries incurred while in the defendant's
employ through the alleged negligence of the defendant's super-
intendent.    Writ dated June 14, 1902.

In the Superior Court the case was tried before *Hardy, J.*,
who refused to order a verdict for the defendant and submitted
the case to the jury in the manner stated in the opinion.    The
jury returned a verdict for the plaintiff in the sum of $400 ; and
the defendant alleged exceptions.

*W. L. Harris*, for the defendant.

*J. J. Hogan*, for the plaintiff.

BARKER, J.    The defendant in building a gasometer was con-
structing four shells of iron plates each shell being built up by
so riveting plates together as to make a circular shell about
twenty-five feet high.    The circumference of the largest shell
was about five hundred feet.    The other shells were within this
outer one and each was so much smaller in diameter than the
next outer one as to leave a space between them of about two
feet.    Each of the three inner shells had near its outer foot a

cup shaped projection the outer circumference of which came within two or three inches of the next outer shell.

The work was being done in the open and a person placed on the ground between any two of the shells could look upward to the sky, but in the space between the shells were stagings consisting of single planks eight or ten inches wide held up by brackets, and upon which gangs of men were riveting in building up the shells. Besides the gangs of riveters there also was a staging gang who when the progress of the work required raised the stagings to a higher level.

The plaintiff had been set to work in the spaces between the shells gathering rivets which had fallen there during the progress of the work. A rivet having fallen near him he left his work and went to the defendant's superintendent and had a talk with him about the danger of the work. What was said between them was in dispute. The plaintiff testified that he told the superintendent that the work was dangerous, that he did not care to get injured and asked if the superintendent would not let him do the work nights or on Sunday; that the superintendent said that could not be as he wanted the rivets to use immediately, and further said, "You go back to work and I will take care of you." The superintendent testified that he told the plaintiff that the work was not dangerous if he took care not to go underneath any part when men were working above, and called his attention to the amount of room he had, about five hundred feet, without being compelled to get in under where the men were working, and said that he must look out for himself and keep away from where work was going on above.

After the talk with the superintendent the plaintiff went back to his work, and in the course of a few minutes was struck by something falling upon his head from above, inflicting the injury for which he sued. There was evidence tending to show that the superintendent after the talk with the plaintiff gave no directions and did nothing looking to the plaintiff's protection.

The case was submitted to the jury upon a single count, which alleged negligence of the superintendent, a complaint on the part of the plaintiff to him of the danger, and an assurance on the part of the superintendent that he would take precautions for the safety of the plaintiff.

The defendant's exceptions are to a refusal to direct a verdict for the defendant, and to the refusal to give two other requests particularly directed to the aspects of the case as affected by the talk between the plaintiff and the superintendent, and an exception to a portion of the charge relating to the same conversation.

1. In support of the exception to the refusal to order a verdict for the defendant it is contended that the danger was obvious and that the evidence will not justify a finding of due care on the part of the plaintiff, and that upon the evidence he must be deemed to have accepted the risk of such an injury as befell.

This contention would be sound but for the evidence which tended to show that the plaintiff after complaining to the superintendent of the danger and asking to be allowed to do the work at a time when the danger would not exist had been told by the superintendent, "You go back to work and I will take care of you." If he was so told the questions of his own due care and of his assumption of the risk were for the jury. His work required him to look down and to give close attention to finding the dropped rivets in the narrow space to which light came only from above and at a height of twenty or more feet and more or less intercepted by the stagings, and he had a right to rely to some extent on the promise made to him by the superintendent. If the promise was one of present care for the plaintiff's safety it was capable of immediate fulfilment, requiring only the giving of an order to stop work above the place where the plaintiff might be. If it was made as the plaintiff testified, and if the superintendent did nothing in performance of his promise, the question whether the plaintiff was hurt by an occurrence the risk of which he had not assumed, and without contributory negligence on his own part, and solely by negligence of the superintendent in failing to take any steps to secure the plaintiff's safety, was for the jury.

2. In the portion of the charge excepted to the presiding judge after stating the substance of the interview between the superintendent and the plaintiff as testified to by the latter instructed the jury that it was for them to say first whether there was such an agreement made by the superintendent, and then that if they were satisfied "that there was such an assumption

of duty on the part of the superintendent acting within the scope of his duty, and he failed to do it, and the plaintiff was in the exercise of due care, and by reason of such failure . . . was injured, then the plaintiff would have a right to maintain his action under the third count."

Under our decisions there was no error in the instruction. See *Davis* v. *New York, New Haven, & Hartford Railroad,* 159 Mass. 532, 535; *Burgess* v. *Davis Sulphur Ore Co.* 165 Mass. 71; *Scullane* v. *Kellogg,* 169 Mass. 544; *Cavagnaro* v. *Clark,* 171 Mass. 359.

3. The second request was to the effect that if upon the plaintiff's complaint of danger the superintendent replied that there was no danger the plaintiff still assumed the risk, and was in substance given in that portion of the charge which said that "in the absence of any agreement by the superintendent . . . the plaintiff in this case, assumed the risk of that employment, if he knew that articles were liable to fall, either by accident or by negligence of his fellow servants."

4. The third request also was substantially covered by the instructions given and just quoted, in connection with the next clause of the charge which called explicitly the attention of the jury to the defendant's contention as to the interview between its superintendent and the plaintiff.

*Exceptions overruled.* '