Rockingham, {
  Oct. 1, 1907. {

## Tilley v. Rockingham County Light & Power Co.

The fact that a gas main has been repeatedly cleaned out without accident is evidence that it and its appurtenances are properly constructed, so far as suitableness for the act of cleaning is concerned.

The responsibility of a master for injuries caused by the negligence of a fellow-servant is not determined by a difference in rank between the injured servant and the one in fault, nor by the fact that the negligent servant was foreman or in control of others, but upon the nature of the act complained of: whether it was an act of service, or an attempted performance of a non-delegable duty of the master.

Where a gas company has provided suitable valves by means of which a flow of gas to a main may be prevented, the act of closing them preparatory to cleaning a pipe is a mere detail of the service, and not a non-delegable duty owed by the corporation to the persons employed in the work.

A servant cannot recover of the master for personal injuries on the ground of the latter's failure to provide a safe place for the work, if the danger complained of was temporary and resulted solely from the negligent failure of a fellow-servant to perform a detail of the service.

CASE, for negligence. Trial by jury. Transferred from the January term, 1907, of the superior court by *Pike*, J., upon the plaintiff's exception to an order of nonsuit.

The plaintiff, an employee of the defendants, was burned and injured by an explosion which occurred while he was assisting in cleaning out a hydraulic main in their gas works. The negligence alleged consisted of the following particulars: (1) Neglect of the defendants' foreman to have the gas shut from the main before the plaintiff removed the covers; (2) his neglect to have the pipes aired so as to be free from gas; and (3) negligent construction of the main, in consequence of which gas leaked through the valves into the pipe which the plaintiff was directed to clean.

The following is a summary of the material portions of the testimony produced by the plaintiff: He, two fellow-servants, and the foreman of the defendants' gas department were engaged in cleaning out a hydraulic main. By direction of the foreman, the plaintiff removed the caps from two pipes and then asked if everything was all right, to which the foreman replied, in substance, "Yes, go ahead." The plaintiff then cleaned out one pipe, using an instrument which he described and which, he said, "we always use for it." As he began to clean the second pipe, an explosion occurred which caused the alleged injury. The witnesses did not know whether there was gas in the pipes, nor what caused the

explosion. Fire issued from the pipe at the time of the explosion. When the caps were first taken off, smoke issued from the pipes "so fiercely" as to drive the employees away temporarily. There were valves in the pipes by which the gas could be prevented from flowing back from the gas-holder into them. If the valves were closed and tight, no gas could flow back. This main had been cleaned out an average of four times each year for eleven years without accident. Nothing was said about closing the valves on this occasion, and it did not appear whether they were closed or not. Nothing was said about airing the pipes. The plaintiff had nothing to do with shutting off the gas; and when asked if anybody shut it off, he replied, "I supposed the foreman." The foreman was present while the work was in progress.

*John G. Tobey, Jr., Ernest L. Guptill,* and *Page & Bartlett,* for the plaintiff.

*Samuel W. Emery* (of Massachusetts), for the defendants.

CHASE, J. The plaintiff at the time of his injury was engaged with two other servants in cleaning out a hydraulic main, under the immediate supervision of the foreman having charge of the defendants' gas department. It would seem from the evidence that the hydraulic main consists in part, at least, of pipes in which valves are placed, which when closed prevent the gas from flowing from the gas-holder back into the pipes, and that usually four or more of these valves are closed while the main is being cleaned. One ground of liability alleged by the plaintiff is a faulty or imperfect construction of the main, in consequence of which gas leaked through the valves into the main and caused the explosion. There is no evidence whatever supporting this allegation. On the other hand, the evidence that the main had been cleaned out without accident an average of four times each year for eleven years tends to prove that it and its appurtenances were properly constructed, so far as suitableness for the act of cleaning was concerned.

The other allegations of the plaintiff relate to negligence of the foreman in omitting to close the valves before removing the caps from the pipes and in omitting to properly air the pipes. Assuming that there was evidence tending to support these allegations and also to prove that the explosion was due to such negligence,— a somewhat violent assumption,—the exception raises the question whether the defendants are responsible for the negligence. As was said in a recent decision: "The responsibility of the master is not determined by a difference in rank between the servant

injured and the one in fault, or by the fact that the servant guilty of negligence is foreman or in control of others, but upon the nature of the act complained of: whether it is an act of service, or an attempted performance of a non-delegable duty of the master." *Hilton* v. *Railroad,* 73 N. H. 116, 119. See, also, *McLaine* v. *Company,* 71 N. H. 294; *Galvin* v. *Pierce,* 72 N. H. 79; *Wallace* v. *Railroad,* 72 N. H. 504.

The question of law consequently resolves itself into this: whether the alleged negligence of the foreman was negligence in the performance of a non-delegable duty owed by the defendants to the plaintiff. So far as appears, the shutting of the gas from the main before removing the covers was a detail of the work that could be readily done. Valves were provided for the purpose, and all that was necessary was to close them properly. It is not suggested, either in the plaintiff's allegations or testimony, that any special skill was required to enable one to do this. The act of closing them would seem to be an act of service purely. As to the airing of the pipes, there is nothing in the testimony tending to prove that it was necessary or customary, nor is it a matter of common knowledge that they should be aired before attempting to clean them out. Moreover, the act of airing them, if necessary or prudent, would also seem to be an act of service.

But the plaintiff says in argument that the failure to close the valves and the consequent flow of gas into the pipes rendered the place to which he was assigned an unsafe place for his work. The place was a portion of a structure designed for the manufacture of gas. So far as appears, it was reasonably safe for that purpose. As previously stated, valves were provided for shutting the gas from the pipes whenever there was occasion for doing so. It does not appear that any special construction was required for airing the pipes. According to the plaintiff's allegations, whatever want of safety there was in the place at the time of his injury was temporary, and was due to failure to make proper use of these valves, or to properly air the pipes, or both. The defendants having provided proper appliances for securing safety to their employees, were not chargeable with the non-delegable duty of properly operating them. They were at liberty to entrust the operation of the appliances to any of their employees, provided only they exercised ordinary care in selecting the employee; and it is not contended that they failed in this respect in this instance. At best, so far as appears by the testimony, the acts required to secure safety of the place were mere acts of service which the defendants might properly delegate to their employees. The plaintiff's position is not strengthened to any degree by attributing his injury to want of safety in the place, for such course leads to the same

result, namely, that the negligence was that of a co-employee of the plaintiff, for which the defendants are not responsible.

Neither the plaintiff's allegations nor his proofs make a case for charging the defendants for failure to inform the plaintiff of the dangers incident to his employment, or to prescribe and promulgate reasonable rules for the protection of their employees while engaged in cleaning out the mains, or to perform any other of a master's non-delegable duties. As his case was presented to the jury, the nonsuit was properly ordered.

*Exception overruled.*

All concurred.