GUEST v. EDISON ILLUMINATING CO.

MASTER AND SERVANT — PERSONAL INJURIES — SAFE PLACE TO WORK — ELECTRIC FIXTURES — FELLOW-SERVANTS — FOREMAN — AGREEMENT CREATING LIABILITY.

> After complaint by plaintiff that defendant's electric fixtures upon which plaintiff was working were unsafe, defendant's foreman put in a switch box in accordance with plaintiff's instructions and agreed with plaintiff that he would see that during the time plaintiff was at work upon the fixtures the switch was kept open. While plaintiff was at work and in the absence of the foreman the switch was closed by some person unknown and injury to plaintiff followed. *Held*, that the foreman had no authority to bind the defendant by his agreement to keep the switch open, and that his failure to keep it open was the negligence of a fellow-servant for which defendant was not liable.

Error to Wayne; Murphy, J. Submitted November 13, 1907. (Docket No. 126.) Decided December 10, 1907.

Case by Jarvis Guest against the Edison Illuminating Company for personal injuries. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Affirmed.

*Samuel W. Burroughs*, for appellant.

*Keena, Lightner & Oxtoby*, for appellee.

BLAIR, J. Plaintiff brought this action to recover damages for injuries received through the negligent closing of an electric switch, whereby a current of electricity was conducted into certain wires upon which plaintiff was working, within the line of his duty. The defendant, the Edison Illuminating Company, was constructing and had nearly completed a plant at Delray, in Wayne

county. The general manager of the company was Alexander Dow. Immediately under Mr. Dow, and having supervision of the operation of the plant at Delray, was George W. Cato. Under Mr. Cato was Hiram Ford, who was superintendent of interior construction. Frank Davis, foreman of defendant, and the other electricians and wiremen worked under the general direction of Mr. Ford. Plaintiff testified:

" I was injured there September 26, 1904. I was working at that time under Mr. Davis. His position was foreman of the electricians of the plant which I have been speaking about."

At the time of his injury, plaintiff was doing certain work on top of the boilers, putting in conduits, wires, sockets and lamps for lighting above certain boilers in the boiler room, some 21 feet above the floor, for the purpose of lighting the water gauges. On the day before his injury, plaintiff had complained to the foreman that the plant was in a dangerous condition, and, to obviate the danger complained of, a switch box was put in in accordance with plaintiff's instructions. Plaintiff testified:

" It was my duty to inspect that box before going to work. I did inspect it. That was in accordance with the rules of electricians. In connection with the inspection I found the box to be perfectly safe. * * *
" Mr. Davis told me if I would go up to work there he would see that that swich box was kept open all the time I was up there. He would see. He would be in a position to do it. I relied upon my inspection first and Mr. Davis' agreement with me, what he said. When I had this conversation with him he was at the switch box in this plant where it was situated. In the presence of Mr. Davis, for the purpose of making it safe, I threw the switch open. I turned it down. I opened it. I nailed the lid on the box, in that shape (illustrating). My purpose of nailing the lid on the box was so that no person would put their hand in there and throw the lever up. I put a written notice on that box for no person to throw the switch in or some words to that effect. That notice consisted of an official card of the company. That was

in the line of my duty to do that. * * * He said he he would see the switch was kept open every moment I was up there. * * *

While working on one of the sockets, "the electricity came on me and held me there. I could not get off and it grounded me there. My weight carried me off to the floor below. * * * I fell from there to the floor. * * * I account for that—some person threw in the switch. * * * After I fell I saw Mr. Davis, the foreman, about two or three minutes after. * * * He says, 'I forgot that you were up there.' * * * This man Davis was the foreman of that company. He had charge of all the electricians. It was under him that I was working. * * *

"*Q.* What was the duty of this foreman under the rules of the company, if you know, with reference to seeing after it that the electricians were safely guarded while you are at work?

"*A.* To take due care of all the men that were in the plant engaged in electric work, meaning by that to see that the machinery was so protected that electricity could not pass to the electrician who was at work.

"*Q.* When you went above just after you had made the inspection and closed the switch box and had had the talk with Mr. Davis, was that switch box perfectly safe?

"*A.* It was, it was open. If the switch had been kept open under the observation and guardianship of Mr. Davis, this injury could not have occurred to me as a result of my fall. * * * Davis was subject to Mr. Cato's orders, I think. Mr. Ford was down there over all the plant. * * *

"*Q.* Mr. Ford—if you know about this, answer it— had charge of the construction work for the Edison Illuminating Company?

"*A.* I think he had some charge. I know he did the hiring out there and put me under Mr. Davis. I went to Mr. Cato and he told me to go to Mr. Ford and Mr. Ford hired me and put me in charge of Mr. Davis. Mr. Ford is one of the officials of the company. I think Mr. Ford's work was to attend to the construction work in this company. He had charge over all but he was not there at all times. When he was not there, it was Mr. Davis had to see to it. * * * I could not tell how many other men than myself and the helper were at work under Davis' direction there. There might have been more than

10 or 15, I don't know how many men.  I was working alone in that business.  *  *  *  During this time I was at work there Mr. Davis and his men, including my helper, were at work at other parts of the building.  I was the only one in the electrical department at work in this boiler room.  *  *  *  When I came down at noon I guess Mr. Davis had gone to dinner.

"*Q.* When you came back where was Mr. Davis?

"*A.* He was not there but I inspected the switch.  Mr. O'Hara was there and I went and looked at the switch. *  *  *  The switch was all right then.  It had the cover on it.  It was nailed on.  There was a notice across the front.  It said no person should throw in the switch, or words to that effect.  I wrote that myself and put it on, on the card.  *  *  *  It was the rule of the company that any man who was at work on any line which needed protection should put up a notice.  The purpose of that was to prevent anybody from going and turning on the switch and hurting the men.  I knew those rules. In pursuance of that rule, I put the notice on under Mr. Davis' agreement when I went to work. * * * And unless somebody had violated that notice and turned on the switch, I would not have been hurt.  *  *  *

"*Q.* But do you know who it was turned on that switch?

"*A.* I don't, because I was out of sight of the switch box when it was turned on.  *  *  *  When Mr. Ford hired me and put me to work it was some time in July. This was preceding the September that I was hurt.  Mr. Ford instructed me to go to work under Mr. Davis.  I worked from about 9 to 2 :30."

Mr. Davis testified:

"I worked under the direction of Mr. Ford.  His general authority or business was that he superintended the general construction of the work.  Mr. Cato was supertendent of all the departments.  I do not know who turned that switch."

He also testified:

"I was watching the general work of the plant, overseeing it, and that was my duty to do that as foreman over these wire workers and electricians and that is what I was doing on that day."

After the close of the testimony the court, upon motion of defendant's counsel, directed a verdict for defendant upon the ground that the foreman Davis was a fellow-servant of the plaintiff and the defendant company was not responsible for his negligence nor bound by his agreement to watch the switch box and see that the switch was not closed. Plaintiff brings the record to this court by writ of error upon various assignments of error, the principal of which, and the only one which we think it necessary to consider, is that the court erred in holding that Davis was a fellow-servant of plaintiff, plaintiff contending that he was a vice-principal.

Unless the foreman's failure to perform his agreement to watch the switch box and see that it was not interfered with was a failure to discharge a duty which the corporation owed to plaintiff, no negligence was proved on its part. On the contrary, the plaintiff's evidence conclusively demonstrates that, except for the alleged new duty arising from the agreement, the defendant discharged its full duty to plaintiff. Independent of the agreement, there was certainly no rule of law which made the defendant an insurer of the plaintiff's safety. If the agreement acquired binding force against the defendant, it was not because authority had been impliedly delegated to the foreman to make it, in discharge of an absolute duty of the defendant, but because his position as foreman authorized him to bind the defendant to the performance of an absolute duty which theretofore had not existed and which was in derogation of its rules. Whether any officer of a corporation, however high his grade, would be acting within the scope of his authority in making such an agreement for the corporation, it is unnecessary to determine. We are satisfied that the foreman Davis possessed no such authority, and that in making the agreement he did not represent the defendant.

The defendant was not liable for the negligence of the foreman, and the court did not err in directing a verdict.

*Wellihan* v. *Wheel Co.*, 128 Mich. 1; *Mikolojczak* v. *Chemical Co.*, 129 Mich. 80; *Page* v. *Food Co.*, 142 Mich. 17.

The judgment is affirmed.

McALVAY, C. J., and CARPENTER, GRANT, and MOORE, JJ., concurred.