[L. A. No. 2299. In Bank.—November 20, 1909.]

## O. S. BRIDGES et al., Respondents, v. LOS ANGELES PACIFIC RAILWAY (a Corporation), Appellant.

NEGLIGENCE—MASTER AND SERVANT—DUTY TO FURNISH SAFE PLACE TO WORK.—As a general rule, the obligation of the master to furnish to his employees safe appliances and a safe place for work is one that cannot be delegated, and for a breach of this duty, resulting in an injury to the servant, the master is liable.

ID.—DELEGATION OF DUTY TO CO-EMPLOYEE.—The fact that the master may have intrusted the furnishing of a safe place and appliances to an employee who would, for other purposes, be regarded as a fellow-servant of the party injured, will not exonerate the master.

ID.—DANGER INHERENT IN WORK—FAILURE OF CO-EMPLOYEE TO USE MEANS FURNISHED.—Such rule is subject to the qualification, that where the place in which the work is to be done and the appliances to be used are, in themselves, as safe as can reasonably be expected, and the danger arises necessarily in the doing of the work, the master has discharged his duty when he has furnished to the employee suitable means of obviating the danger. The failure, on the part of a co-employee, to use such means, is the act of a fellow-servant for which the master is not liable.

ID.—EMPLOYEE IN ELECTRIC STATION—NEGLIGENCE OF CO-EMPLOYEE—FAILURE TO SHUT OFF CURRENT.—The proprietor of an electric station, the electric wires, switches, and other appliances of which were suitable and reasonably safe for the purposes to which they were applied, is not liable for an injury occasioned to an employee working about the station by coming in contact with a live wire, when such injury was due to the negligence of a fellow-servant having control of the electric current either in notifying the party injured that the current was shut off, or in failing to turn a switch which would have shut it off.

APPEAL from an order of the Superior Court of Los Angeles County refusing a new trial.  W. P. James, Judge.

The facts are stated in the opinion of the court.

John D. Pope, George P. Adams, and Gurney E. Newlin, for Appellant.

Anderson & Anderson, and Thomas L. Woolwine, for Respondent.

SLOSS, J.—A judgment for three thousand dollars was recovered by plaintiffs in this action for the death of their son, O. R. Bridges. The deceased was in the employ of the defendant as an electrician's helper, and was killed by coming in contact with a highly charged electrical wire in a substation of the defendant. This is an appeal by defendant from an order denying its motion for a new trial.

The allegation of the complaint is that the defendant "carelessly and negligently failed and neglected to furnish the said O. R. Bridges with a safe place to work, in this, that the defendant carelessly and negligently ordered and directed the said O. R. Bridges to go among some highly charged live electrical wires from which it had carelessly and negligently failed and neglected to disconnect or cut off the electrical current, whereby the said O. R. Bridges came into contact with one or more of the said live wires and received therefrom a heavy shock of electricity, from the effects of which he died."

The following facts may fairly be said to appear without contradiction. In June, 1906, which was prior to the amendment of March 6, 1907, [Stats. 1907, p. 119], to section 1970 of the Civil Code, relative to the liability of an employer, O. R. Bridges had been in the employ of defendant as a helper for about six months. He was a member of the construction gang, which was under the charge of one Scott as foreman. On the day of the accident, this gang was engaged in the effort to install or move a piece of machinery at the Ocean Park sub-station. To do this it was necessary to fasten a chain-block to a timber which was to be attached to the upper part of the building. The timber itself was to be hoisted by means of a rope and pulley. Bridges started up a ladder with the rope. Before getting to the top, he asked whether

the line was clear. Somebody answered that it was. Bridges went on, walked across a truss supporting the roof until he came to several highly charged wires. In attempting to climb over them he came in contact with one or more, and received the shock which caused his death. The current at the sub-station was controlled by a switch, which, if properly turned, would have cut the current out from the wires. It was this condition that Bridges referred to when asking whether the line was clear. The fact was that the switch had not been turned, and, as the result showed, the current was flowing through the wires.

Before the work was undertaken the chief operator of the defendant had instructed Scott, the foreman of the construction gang, to "open the line," i. e. to cut off the current. The line was used for lighting purposes. It fed "only a few lights and was not important." If this order had been carried out, no injury would have resulted to any one coming in contact with the wires. The duty of shutting off power rested on the operators. No one else (except Scott and the chief operator) did that kind of work.

There were other facts shown, but we have stated all that we think have any bearing upon the one point which we shall consider, i. e. whether, on these facts, the only negligence shown was not that of a fellow-servant of the deceased—a default for which the defendant is not liable. (Civ. Code, sec. 1970.) It is, of course, thoroughly settled, as a general rule, that the obligation of the master to furnish to his employees safe appliances and a safe place for work is one that cannot be delegated and that for a breach of this duty, resulting in injury to a servant, the master is liable. He will not be exonerated by the fact that he may have intrusted the furnishing of a safe place and appliances to an employee who would, for other purposes, be regarded as a fellow-servant of the party injured. (*Donnelly* v. *San Francisco Bridge Co.*, 117 Cal. 417, [49 Pac. 559].) But this rule is subject to a qualification which appears to us to have plain application to the facts of this case. Where the place in which the work is to be done and the appliances to be used are, in themselves, as safe as can reasonably be expected, and the danger arises necessarily in the doing of the work, the master has discharged his duty when he has furnished to the employee suitable means of

obviating the danger. The failure, on the part of a co-employee, to use such means, is the act of a fellow-servant. It is not the breach of a duty which rests upon the master as a non-delegable duty. This rule is analogous to that applied in cases where "several persons are employed to do certain work, and by the contract of employment, either express or implied, the employees are to adjust the appliances by which the work is to be done." (*Burns* v. *Sennett,* 99 Cal. 363, [33 Pac. 916].) It is difficult to define with precision the limits of this doctrine. It is best set forth by a statement of some of the cases in which it has been given effect.

In *Daves* v. *Southern Pacific Co.,* 98 Cal. 19, [35 Am. St. Rep. 133, 32 Pac. 708], a section hand was killed by a train which had run into an open switch. The foreman, who should have closed the switch, had failed to perform his duty, and the accident was due to this neglect. For such neglect the master was, as was held, not liable, the court saying, "The duty violated did not relate to the place of work, but to the negligent use of an appliance or instrumentality which was proper and suitable for the purpose for which it was furnished by the master, and such use of it was simply a detail of the work or management of the business, therefore a duty of the servant, which he, and not the master, was bound to perform." The same principle was applied in *Donnelly* v. *San Francisco Bridge Co.,* 117 Cal. 417, [49 Pac. 559], where the plaintiff, working under a pile-driver, was injured by a block thrown from above by a fellow-servant. Before throwing any blocks, the latter was accustomed to ask the superintendent whether all was clear below, and on this occasion the superintendent had negligently answered the question in the affirmative. So in *Donovan* v. *Ferris,* 128 Cal. 48, [79 Am. St. Rep. 25, 60 Pac. 519], where the negligence consisted in failing to warn a workman in a quarry that blasts in a neighboring tunnel were about to be exploded. In *Miller* v. *Centralia Pulp etc. Co.,* 134 Wis. 316, [113 N. W. 954], the plaintiff was injured by falling into an elevator shaft. His fall was due to insufficient lighting of the shaft, and the cause of the want of light was the negligence of a co-employee whose duty it was to keep the place properly lighted. "The fact," says the court, "that a working place may be rendered unsafe by reason of the negligent operation by an employee of

an appliance furnished by the master does not preclude the master from committing the operation of such an appliance to a competent employee, and any injury to an employee due to such negligent operation of the appliance is not a failure of duty by the master to furnish a safe place or appliance, but is a neglect of the servant in the conduct of a common employment." Where a workman engaged in pouring molten iron into a mold was informed by the superintendent that the molds were all right, whereas in fact they were too damp, it was held that an injury resulting from a blowing out of the iron by reason of such dampness was not attributable to the employer's failure to use due care in providing safe appliances. (*Whittaker* v. *Bent,* 167 Mass. 588, [46 N. E. 121].) Still closer in their facts to the present case are *Tilley* v. *Rockingham County L. & P. Co.,* 74 N. H. 316, [67 Atl. 946] ; and *Guest* v. *Edison Illum. Co.,* 150 Mich. 438, [114 N. W. 226]. In the former the plaintiff, while engaged in cleaning out an hydraulic main, was injured by an explosion of gas which had been allowed to enter the main. The gas could have been kept out by the use of valves attached to the main, and it was the duty of the foreman to close these valves. It was held that the employer was not responsible for the failure of the foreman to discharge this duty. In *Guest* v. *Edison Co.,* the plaintiff was working upon some electric wires from which the current had been cut off by the opening of a switch. The foreman had told him that he would see that the switch was kept open. This he forgot to do. The switch was closed and plaintiff sustained injuries. An order directing a verdict for the defendant was sustained upon appeal, the court holding that the only negligence shown was that of a fellow-servant. (See, also, *Dixon* v. *Winnipeg etc. R. R. Co.,* 11 Man. Rep. 528.)

Upon the reasoning of these cases, it must be held that the evidence was insufficient to show any negligence for which the appellant is responsible. There is no claim that the wires, switches, and other appliances were not suitable or that they were not reasonably safe for the purposes to which they were applied. It is not charged that the defendant failed to exercise due care in the selection of its employees. The accident was caused by the fault of Scott, either in informing Bridges that the line was clear, or in failing to turn the switch. In either view this negligence was that of a fellow-servant in the

operation of the details of work for which proper appliances had been furnished. The employer, having provided safe means for doing the work, does not insure the employee against the negligent failure of co-employees to use such means. The duty of adjusting the appliances to the varying requirements of the work to be done may be delegated to servants.

The order denying a new trial is reversed.

Angellotti, J., Melvin, J., and Henshaw, J., concurred.

SHAW, J. dissenting.—I dissent. Bridges, the deceased, was working under Scott, who was foreman. He was one of a party of workmen doing construction work at different places along the line of the defendant's railway. Neither Scott, nor any of the men, had any authority to shut off the electricity. It is obvious that the switches would often be far away from the men working along the line, and that the control of the current could not conveniently be a part of their work, or within their province. The evidence shows that one Peacock was chief operator of the defendant company, and that it was his duty to turn off the current when necessary to insure the safety of men at work on the lines, and that none of the men at work with Bridges were authorized to do so. I think the main opinion makes an unwarrantable assumption in saying that men engaged in the work with the deceased were furnished with "suitable means of obviating the danger." They had no authority to do the act which alone would remove it, and there is no evidence that the means were at hand, or under their control. Peacock's direction to Scott to turn off the current did not make it a part of the work in which the men were engaged, nor make Scott, as to that act, a fellow-servant with them. He was, for that purpose, a principal, and his failure to turn it off was the negligence of the defendant.

Lorigan, J., concurred in the foregoing dissenting opinion.