DANIEL DEAN *vs.* E. D. SMITH & others.

Worcester.    October 5, 1897. — November 24, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Personal Injuries — Master and Servant — Employers' Liability Act — Negligence of Superintendent — Assumption of Risk — Law and Fact.*

In an action for personal injuries occasioned to the plaintiff, while in the defendant's employ, by an explosion of dynamite in a rock where he was drilling, there was evidence tending to show that A. was acting as superintendent in directing the work and telling where holes were to be made; that, two days previously, a hole which had been loaded with dynamite had not been fired, owing to a want of connection of the wire; that this was known to A., who directed the plaintiff to drill a new hole which pointed towards the hole where the dynamite was; and that the explosion resulted from contact with the dynamite in drilling the new hole. The plaintiff testified that he knew nothing of dynamite being in the rock; and there was evidence for the defence that A. had reason to think that this charge had been exploded, and that, before putting the plaintiff to work, he looked to see if he could find any miss-fires, and found none. *Held*, that the plaintiff could not be said, as matter of law, to have assumed the risk, and was entitled to go to the jury upon the question of A.'s negligence.

TORT, for personal injuries received by the plaintiff, while in the defendants' employ. The declaration contained three counts, the first and third at common law, alleging negligence of the defendants, and the second under the employers' liability act, St. 1887, c. 270, alleging negligence of a person in the defendants' service, intrusted with and exercising superintendence, whose sole or principal duty was that of superintendence.

Trial in the Superior Court, before *Gaskill*, J., who allowed a bill of exceptions, in substance as follows.

The defendants were contractors engaged in building an underground conduit in the construction of the Metropolitan Waterworks at Berlin. The shaft at "shaft No. 2" had reached the level of the conduit, which consisted at that point of a tunnel running each way from the shaft. It was in this tunnel that the plaintiff was injured by an explosion of dynamite on August 10, 1896, which was Monday.

The plaintiff testified that he was taken into the employ of the defendants in April, 1896, by one McAttee, who hired him for drilling; that he worked there up to the time of the accident; that on the day of the accident he was drilling on the bench, which is that part of the shaft below the heading; that McAttee did not do anything but give orders; and that McAttee was there on the day when he was hurt and put him to work; and further testified as follows: " When he came up I was standing on the bench with a lamp in my hand, and he told me, ' Get your drill and put a hole in down here.' That was down on the side of the bench. It was a rock at the foot of the bench like a step at the left side of the conduit or tunnel. He told me to put in a lifting hole to blast this rock or step away. That is a hole to run slanting with the ground or bottom of the tunnel. He kicked the rock and told me where to put my machine, . . . and said let her go there right into the rock. . . . After he told me which way he wanted the hole to go, he went off somewhere, having told me to put the hole in four feet. I kept drilling about fifteen or twenty minutes before it blew up. . . . I knew nothing about there being any dynamite in the rock. . . . I had no orders to work there except from McAttee."

Daniel M. Hawkins, called as a witness by the plaintiff, testified that he was engaged on the same work for the defendants, and was in the tunnel the same night in which the plaintiff was hurt; that he was helping him on the drill; that he did not see McAttee at the time, but knew that he was there seeing to the drilling; that " he told us where to drill "; that they drilled fifteen or twenty minutes before the explosion; and that McAttee directed the plaintiff and himself all the time he was drilling

before the explosion occurred, and the last he saw of him was five minutes prior to the explosion.

Thomas Scott, called as a witness by the plaintiff, testified that he was working with the plaintiff the night he was injured; that he saw McAttee around there; that he "was boss"; and that he came in and told the plaintiff where he wanted him to drill.

Luke Moore, called as a witness by the plaintiff, testified as follows: "I worked in shaft No. 2 the Saturday before the accident at the east end all day. Five holes were drilled across the bench and loaded. When they were filled with dynamite the next thing was to put an exploder into them. . . . Then we connected the wires. I put wires into each of these five holes. . . . The second hole from the left hand rib the wires were not connected with. The wire in that hole was broken off so we could not connect it. The tamping was all on the powder when I saw that the wire in that hole was broken off. . . . McAttee went to all those holes before they were exploded. I told him those wires were pulled off so we could not connect that hole. He said, 'Leave it and go to the others.' We connected the first with the third, skipping the second. After that the main wires were put on and fired the holes."

Robert Wells, called as a witness by the plaintiff, testified as follows: "I worked in shaft No. 2 on Saturday before the plaintiff was hurt. . . . McAttee called me to help Moore tamp the hole. When we got to the second hole, the wire was broken. Moore told me to go and tell the foreman that a wire was broken in the hole, and we could not connect. I went and told McAttee, and he came and looked at it. Said, 'Let her go.'"

Carey Dean testified, for the plaintiff, as follows: "I worked in the west heading in the forenoon, and partly in the afternoon, Saturday before the accident. I went to the east heading about a quarter of five Saturday afternoon. I walked in after McAttee. When I got there he was standing up on top of the bench, six or seven feet up, and when I was standing up with an arm full of powder I saw the wire hanging out the second hole from the rib. Three holes had been exploded. . . . The second one had not stirred at all, only the wires were hanging down off the bench. I said, 'McAttee, this hole did not go off.' He said,

'No, the wire was cut in that hole' I said, 'Was the powder exploded in it?' He said, 'No, leave it,' and he stood with a stick and shoved the powder in the first hole. Then I connected the first hole and skipped the second; then we all went up on top and exploded the blast. McAttee told me not to interfere with that hole, and I asked him particularly, as I thought he did not see it, as he was standing on top, and I said, 'Here is a miss-hole,' and he said he knew it. I says, 'I will put an exploder in,' and he says, 'No, leave it go.' . . . I was cleaning the west heading when I heard the explosion. I then went to the east heading and ran to the face of the bench. . . . The drill was pointed diagonally. I do not suppose the foot of it was any farther from the rib than two feet or three feet, and then it would run right into a hole that was left there. . . . This hole was fired twice Saturday."

McAttee, called as a witness for the defendants, testified: "I was foreman in shaft No. 2. . . . I have known holes not connected by the powder to be fired. When a hole is not connected with the powder, it is left to the judgment of the foreman. I left that hole off and connected the other four and fired them. I went back and saw that the holes did not do the execution they ought to have done. I reloaded every one of those holes, and put the powder down and fired them. The miss-hole was the one where the wire broke, and I left it. I did not put the powder in that hole. After firing the second time I went home Saturday night. . . . I went in there again Monday evening. . . . I saw right away there was some bottom about a foot and a half all the way across the tunnel, so I had that cleaned up, and looked around to see if there were any holes that had missed. I could not find any anywhere, so I put the plaintiff and Hawkins on the left hand side of the tunnel with their machines, and Scott and Williams on the right to drill lifting holes. . . . The first thing I did when I went to work on Monday night was to look after the miss-fired holes."

William E. Gibbs, called as a witness by the defendants, testified that he had made a special study of and had had special experience in the use of dynamite in rock; and after the circumstances prior to the accident had been referred to, he was asked the following question: "I suppose if the drill reached

the dynamite in the rock it would explode?" to which he answered, "Always, if it struck it."

Robert Hosley testified for the plaintiff, in rebuttal, that he worked in shaft No. 2 on the Saturday night prior to the accident; that one Wilson was foreman that night; that they did not do any work on the bench until they had drilled the east heading above the bench; that they drilled the heading and fired it on Sunday morning; that he worked in that heading again on Monday morning; that Wilson was foreman, and was there; that when Wilson came in he walked up to the bench, and the witness told him he had missed a hole there and asked him what he was going to do about it, whether he was going to fire it or not, and he said, "No, leave it alone and stay up in the heading"; and that they did not blast on that bench Monday.

The evidence in the case showed McAttee to be a superintendent, under the statute.

At the conclusion of the evidence, the defendants asked the judge to rule that, upon all the evidence in the case, the plaintiff was not entitled to recover; but the judge declined so to rule.

The jury returned a verdict for the plaintiff under the second count; and the defendants alleged exceptions.

*W. S. B. Hopkins,* (*F. B. Smith* with him,) for the defendants.
*H. Parker,* (*C. C. Milton* with him,) for the plaintiff.

ALLEN, J. There was evidence tending to show that McAttee was acting as superintendent in directing the work, and telling where holes were to be made; that on the Saturday before the accident one hole, which had been loaded with dynamite, had not been fired, owing to a want of connection of the wire; that this was known to McAttee; that on the Monday following he directed the plaintiff to drill a new hole, which pointed towards the hole where the dynamite was; and that the explosion by which the plaintiff was hurt resulted from contact with the dynamite in drilling the new hole. This evidence tended to show that the accident occurred in consequence of the negligence of the defendants' superintendent, while he was acting in that capacity. The plaintiff testified that he knew nothing of there being dynamite in the rock; and it could not be held as matter of law that he assumed the risk.

There was some evidence on the part of the defence that McAttee had reason to think that this charge had been exploded, and that before putting the plaintiff to work he looked to see if he could find any miss-fires, and found none. But on all the evidence, it was for the jury to determine whether he was negligent in putting the plaintiff to work there, knowing that one charge had not been exploded, or making an insufficient and negligent examination to ascertain the facts. *Exceptions overruled.*