JOHN McCOY *vs.* INHABITANTS OF WESTBOROUGH.

Worcester.   October 5, 1898. — February 28, 1899.

Present: FIELD, C. J., KNOWLTON, MORTON, BARKER, & HAMMOND, JJ.

*Personal Injuries — Sewer — Master and Servant — Act of Superintendence — Negligence — Assumption of Risk — Law and Fact — Due Care.*

In an action against a town under the employers' liability act, St. 1887, c. 270, for personal injuries occasioned to the plaintiff while engaged in digging a sewer trench, by reason of the bank, upon which the defendant's superintendent was standing at a place where there was a crack in the earth, falling upon him, it is competent for the jury to find that the superintendent, who had general control of the whole work of digging the trench, in walking along the bank and in stopping to look down at the workmen, was engaged in an act of superintendence; and it is for the jury to say whether, in view of the crack in the earth, it was negligent for him to stand where he did without giving any warning.

If the bank of a sewer trench has been cracked by the blasting of rock in the line of the sewer, and a person employed in digging the trench is injured by the falling of the bank upon him, in the absence of anything to show whether such cracks are liable to occur in digging and blasting out trenches for sewers, and if so, how frequently, and whether he should have anticipated it, it cannot be ruled, as matter of law, in an action for the injury, that the risk was one which the plaintiff assumed; and although he was not set to work in the particular place where he was injured, and was an experienced workman, he had a right to rely somewhat upon the defendant's superintendent as to the safety of the place where he was working, and it is for the jury to say whether he was in the exercise of due care.

TORT, under the employers' liability act, St. 1887, c. 270, for personal injuries alleged to have been caused by the negligence of the defendant's superintendent.   Trial in the Superior Court, before *Bond,* J., who allowed a bill of exceptions, in substance as follows.

It appeared in evidence that the plaintiff was employed in digging a sewer trench in the defendant town, the trench being dug under the direction of one Brainard Putnam, superintendent of sewers in the town, and that the plaintiff was engaged

in blasting rock in a line of the sewer, his occupation being that of holding the drill while two other men were engaged in striking the drill.   The plaintiff testified that he, and the men engaged with -him, went to work in the morning drilling a hole in the rock near the surface of the ground, and a charge of dynamite had been placed in this hole, and the rock had been blasted at this place; that the only orders that he received from the superintendent were orders to go to work blasting rock, without any direction as to where he should do the work ; that he went to work at another point, where the ditch was from four to six feet deep, and where the earth had fallen in from the sides of the ditch and been thrown out, the falling of the earth being caused by the blasting which had been done ; and that he went to work at this particular place of his own motion, and without any direction from the superintendent.   It appeared that this earth had fallen, in some places, in such a way that the top or crust of the earth extended over the ditch below.   While the plaintiff was engaged in holding the drill at this place, the superintendent walked along upon the bank and stopped there, looking down at the workmen, and while so standing, the earth, with the superintendent upon it, fell into the ditch and against the shoulders and back of the plaintiff, and caused the injuries complained of. It appeared in evidence that the plaintiff had been engaged for many years in digging ditches and blasting rocks, and was familiar with such work.   It did not appear that the superintendent at this time gave any directions in regard to the work or had any control of the work at this point, except as it appeared in evidence that he had general control of the whole work of digging the sewer trench.   One of the witnesses, not in any way connected with the work, testified that he saw a crack in the earth ten or twelve feet long, which was extended around the place where the superintendent was standing when looking at the plaintiff and others at work in the ditch, but it did not appear that the superintendent, or any person connected with the work, saw this crack in the earth, or had their attention in any way called to it.

At the close of the evidence, the defendant asked the judge to rule that there was no evidence of due care on the part of the plaintiff; and that there was no evidence of negligence on the

part of the defendant, the defendant contending that the acts done by the superintendent, as testified to by the plaintiff and other witnesses, were not acts of superintendence, and the defendant was in no way responsible therefor.   The judge refused so to rule.

The jury were fully instructed as to the duty of the plaintiff. to prove that he was in the exercise of due care, and as to the risk which he assumed while engaged in his work.   With reference to the condition of the side of the trench where the evidence tended to show there was a crack, the judge instructed the jury as follows: " That leads me to call your attention to a matter which perhaps he did not see and did not know of, because he could not see it down in the ditch where he was at work.   That is, the condition of the bank, the hard portion of the road-bed — crust, if I may so refer to it — had been cracked away, not that it had fallen, but there was a visible crack in it at the place where it finally broke down, and it was that part that was between the ditch and that crack that finally went down.   Now, if the plaintiff did not know that, if he did not understand that was the condition of things, and that added to the danger, then he did not know and appreciate the danger.   It is for you to say whether that was the condition, because you can see the importance of that in determining this question, whether that was the truth with reference to that bank at that time.   Had the under part of this bank broken down so that there was a portion of the road-bed, the hard firm part of it, hanging over with no support under it, and had it in addition to that a crack, whether from the weight being unsupported or whether from a jar that was received from the blasting, or from the constant jar that might come there from drilling and to some extent by the use of the road by teams outside of this, had that crack opened so there was but little to hold it, that part which finally fell off ?   If so, and that added to the danger, that was not one of the risks that the plaintiff knew and appreciated, and therefore assumed.   If it could not be seen down in the ditch, it was not his duty to go outside and inspect, because, as I have already said to you, he had a right to rely upon the duty of the master, and that the master would perform his duty toward him with reference to the place where he was at work.   It was his duty to go on and

do his work, and he had the right to rely upon the master doing what belonged to him to do."

The jury were fully instructed as to the duty of the defendant towards the plaintiff, to which no exception was taken.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*J. E. Beeman,* for the defendant.

*W. A. Gile,* for the plaintiff.

MORTON, J. The defendant contends that the court erred in refusing to rule, first, that the accident was one of which the plaintiff had assumed the risk, and secondly, that the acts of the superintendent in walking along the bank and stopping to look down at the workmen were not acts of superintendence.

The exceptions do not state what instructions were given in regard to what would constitute acts of superintendence. It appears that the superintendent " had general control of the whole work of digging the sewer trench"; and we think that it was competent for the jury to find that, in walking along the bank, and in stopping to look down at the workmen, the superintendent was exercising an oversight of the work, and therefore was engaged in an act of superintendence. *Cashman* v. *Chase,* 156 Mass. 342. It was for the jury to say whether, in view of the crack in the earth, it was negligent for the superintendent to stand where he did without giving any warning.

It is true, as the defendant contends, that the workman assumes the risk of such transitory changes as are incident to and ordinarily may be expected to occur in the prosecution of the work in which he is engaged, whether arising from the operation of natural causes or otherwise. *McCann* v. *Kennedy,* 167 Mass. 23. *O'Neil* v. *Keyes,* 168 Mass. 517. *Beique* v. *Hosmer,* 169 Mass. 541. But in the present case there was nothing to show whether cracks, like that shown to have existed here, are liable to occur in digging and blasting out trenches for sewers, and if so how frequently, and whether the plaintiff should have anticipated the crack which occurred; and we think, therefore, that it could not be ruled, as matter of law, that the risk was one which the plaintiff assumed. Though the plaintiff was not set to work in the particular place where he was injured, and was an experienced workman, we think that he had a right to rely

somewhat upon the superintendent as to the safety of the place where he was working, and it was for the jury to say whether he was in the exercise of due care. *Hennessy* v. *Boston*, 161 Mass. 502. *Coan* v. *Marlborough*, 164 Mass. 206. The exceptions state that " the jury were fully instructed as to the duty of the plaintiff to prove that he was in the exercise of due care," and " as to the duty of the defendant towards the plaintiff," to all which, as we understand, no exception was taken. We think that the exceptions must be overruled.        *So ordered.*