JOHN TANNER *vs.* NEW YORK, NEW HAVEN, AND HART-
FORD RAILROAD COMPANY.

Suffolk.    January 9, 10, 1902. — February 28, 1902.

Present: HOLMES, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Negligence,* Employers' liability, assumption of risk.

The plaintiff was employed to work for the defendant in transferring wires to a new set of poles from old ones which had to be abandoned on account of their age.    He climbed one of the old poles for the purpose of throwing down the wires from the cross-arms.    In throwing down the wires they fell across a wire

guy connecting the pole with a fence.  An overseer was standing on the ground near the foot of the pole and directing the work.  The plaintiff told him the wires were crossed on the guy and asked him what he should do.  The overseer told him to cut the guy, which he did, and the pole fell, causing the injuries for which the plaintiff brought action under the employers' liability act.  *Held*, that, assuming that the overseer was a superintendent within the meaning of the act and that his direction to cut the guy was an act of superintendence, the plaintiff could not recover, because the risk of the falling of a decayed pole was one which he knew and assumed in accepting the employment of dismantling old poles ; that his question to the overseer was not whether it would be safe for him to cut the guy, and that it fairly could not be found, that the order was an assurance that it would be safe to cut it, or that the plaintiff had a right so to interpret the order.

TORT, under St. 1887, c. 270, § 1, cl. 2, for an injury caused by the plaintiff, on the order of the defendant's superintendent, cutting the wire guy supporting a pole of the defendant on which the plaintiff was working.  Writ dated June 2, 1899.

In the Superior Court, *Maynard*, J. refused to order a verdict for the defendant, and also refused to give various rulings requested by the defendant which the decision of the court has made immaterial.

The jury returned a verdict for the plaintiff in the sum of $2,500 ; and the defendant alleged exceptions.

*C. F. Choate, Jr.*, for the defendant.

*F. J. Daggett & J. E. Young*, (*J. W. Hathaway* with them,) for the plaintiff.

BARKER, J.  The plaintiff was one of four men who at the time of the accident were at work for the defendant transferring wires from an old set of poles in the railroad yard at North Abington to a set of new poles which had been put up for the purpose of carrying the same wires.  The reason for setting the new poles and transferring the wires to them was that the old poles were of no more use because they were old, and this the plaintiff knew.  His part of the work was to climb the poles, change the cross arms from the old poles to the new, throw the wires from the old pole and leave them hanging and then walk to the new pole, put the wires on his shoulder, take them up the new pole and put them in their places on the cross arm.  The new poles were at different distances from the old ones, from four to ten feet or more, and not so near that the wires could be thrown from the old pole to the new.  There were both

telephone and signal wires on the poles. One of the four men was at work upon ground wires connecting the rails to the poles, and this man was some two hundred yards away from the plaintiff. Another was upon the ground near the pole on which the plaintiff was at work and was expected to attach to a rope anything which the plaintiff might want so that the latter could haul it up. The fourth man acted as an overseer of the work of the others, going back and forth between the places where they were working.

The plaintiff had climbed a pole and thrown off the wires. They fell across a wire guy connecting the pole with a fence. The overseer was then standing on the ground near the foot of the pole, and the plaintiff told him the wires were crossed on the guy, and asked him what he should do with it. The overseer answered telling the plaintiff to cut it, which the plaintiff did and thereupon the pole fell. The only witness who was called was the plaintiff and his testimony constituted the whole evidence. The suit was under the employers' liability act and the ground on which the plaintiff relied was that the overseer's order to cut the stay was a negligent act of superintendence.

We assume in favor of the plaintiff that the overseer was a superintendent within the meaning of the act, and that his direction to cut the stay might be found to be an act of superintendence and not a mere piece of advice given by one man to another. The question then is whether under the circumstances the order fairly could be found to have been understood by the plaintiff as bearing upon the question of his safety in executing it.

The plaintiff knew that the pole was an old one to be put out of use and to be taken down because of its age. He admitted in his testimony that he knew the tendency of poles which had been set for a long time to rot beneath the surface of the ground. He knew a number of practicable ways in which he could have tested the poles before climbing them, and so have ascertained whether this one was decayed and weak. No test of the strength or condition of this pole or of any of the poles was made by the plaintiff, and none was made or was expected to be made by the overseer or by any of the workmen. It could not be found fairly that the plaintiff went up the pole relying upon any ex-

amination or test of its strength or condition by the overseer or by any one, or expecting or having any reason to expect that such an examination would be made or had been made by any one while he was upon the pole. His question to the overseer was not whether it would be safe for him to cut the guy, and it could not be found fairly that the order was intended to be an expression that it was safe to cut it, or that the plaintiff had a right to interpret the order as such an expression.

The dismantling of a set of old poles to be disused because of their age was an employment which exposed the plaintiff obviously to the risk of being hurt by the fall of a decayed pole in a greater degree than that to which a lineman is ordinarily exposed, and this risk he upon the testimony clearly knew and accepted. It is also clear from the testimony that he did not ascend the pole relying upon any examination of any one for its safety, or upon any duty or practice of the overseer to make such an examination. He had had several years of experience in similar work and it is plain from his testimony that he himself knew as much about the safety of the pole and the danger of its falling if he cut the guy as the overseer knew, and he must also have known that the overseer had made no examination of the pole with reference to its strength or condition, and that the plaintiff knew that the overseer had no other or better means of judging of its safety than he himself had.

We are therefore of opinion that when he cut the guy in compliance with the order he had no right to rely upon the order as implying any assurance from the overseer, and that in cutting the guy the plaintiff acted at his own risk.

As the work was conducted the plaintiff did not rely at all upon any implied or express representation on the part of his employer or of the overseer that any pole which he ascended would furnish him a safe place for his work. This distinguishes the case from those cited for him in which it has been held that workmen digging trenches may rely upon the obligation of the employer to shore up the sides or to give warning. See *Hennessy* v. *Boston*, 161 Mass. 502; *Coan* v. *Marlborough*, 164 Mass. 206; *McCoy* v. *Westborough*, 172 Mass. 504. It was not a case in which while he must be exposed in his work to sudden danger he had a right to expect also a warning which would enable him

to escape the danger.   See *Davis* v. *New York, New Haven, & Hartford Railroad*, 159 Mass. 532; *Lang* v. *Terry*, 163 Mass. 138.   It was not a case in which the act of setting the workman to do a particular thing in a particular place might be understood fairly by the workman to be an assertion that the place was safe.   See *Tremblay* v. *Mapes-Reeve Construction Co.* 169 Mass. 284; *Dean* v. *Smith*, 169 Mass. 569.   Nor could the jury have found an explicit assertion on the part of the overseer that there was no danger, as in *McKee* v. *Tourtellotte*, 167 Mass. 69.   The fact that the plaintiff knew all that any one knew about the condition of the pole and the danger of its falling if he cut the guy distinguishes the case also from *Millard* v. *West End Street Railway*, 173 Mass. 512.

We think it was wrong to allow the jury to find for the plaintiff if he cut the guy relying upon the overseer's order.

*Exceptions sustained.*