## NORBERT CARRIERE *vs.* MERRICK LUMBER COMPANY.

Hampden.     October 4, 1909. — October 19, 1909.

Present : KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Negligence,* Employer's liability.     *Practice, Civil,* Exceptions, Conduct of trial. *Evidence,* Of intent.

In an action for personal injuries sustained by the plaintiff while at work in the lumber yard of the defendant, by reason of a part of a pile of lumber falling upon him, it appeared that the plaintiff had worked in the defendant's lumber yard for fifteen years, that on the day of the accident the plaintiff and another workman of the defendant were directed by a superintendent, whose duty it was to see that the lumber was piled properly, to come with him and be shown where to pile lumber, that there was a long open shed for piling the lumber, divided into spaces called bays, that they came to a bay in which there were three tiers of planks, and, there being more room in it, the superintendent said, "You got to pile on that bay, too," to which the plaintiff replied, "That pile is pretty high," and, being then several feet away, started to walk toward the pile, that the superintendent said, "Never mind that pile, it is all right and safe. Come ; I will show you some other pile," whereupon the plaintiff did not examine the pile, but went with the superintendent, that when in the course of his work

he returned to this bay to pile lumber in it, one tier of lumber about nine feet in height fell upon him, causing his injuries, that it was customary in the defendant's yard, when tiers were piled as high as this in a bay only partially filled, to use cross-pieces to bind the tiers together, and that there were no cross-pieces on the tier in this bay, that lumber had been in this bay for several weeks and some had been taken out a week before, and that, so far as appeared, none had been taken out or put in after that until the time of the accident. It appeared also that from time to time men were at work about the yard straightening up piles of lumber so that they would be safe, and the duty of the defendant's superintendent might have been found to include a general inspection of the piles of lumber to see that they were safe and continued to remain so. *Held,* that there was evidence of negligence on the part of the defendant's superintendent; *and also,* that the question of the due care of the plaintiff was for the jury, because, even if the plaintiff at first thought that the pile was so high that it was likely to fall, he might have been found to be justified in yielding his own view and accepting that of the defendant's superintendent, when assured by him of its safety, especially as the plaintiff did not know of the absence of cross-pieces on the tiers.

No exception lies to the exclusion of a question by a presiding judge where the party asking the question did not state what answer he expected.

Where the plaintiff is recalled as a witness, in a trial in which the evidence appeared to have been closed on the previous day, and the question put to him is the same as one previously addressed to him by his counsel on his direct examination, which then was excluded and which at that time was not accompanied by any offer of proof, the presiding judge in his discretion may exclude the question and an offer of proof accompanying it, because not proffered seasonably.

In an action for personal injuries sustained by the plaintiff while at work in the lumber yard of the defendant, by reason of a part of a pile of lumber falling upon him, it appeared that the plaintiff, on seeing the particular pile of lumber which afterwards fell on him, and which then was several feet away, said, "That pile is pretty high," and started to walk toward the pile, that the defendant's superintendent said "Never mind that pile, it is all right and safe. Come; I will show you some other pile," whereupon the plaintiff did not examine the pile but went with the superintendent. The plaintiff's counsel asked the plaintiff, why he started toward the pile, and stated that the answer he expected was, "To see if it was a good pile." The presiding judge excluded the evidence, which was not offered seasonably. It was *said,* that, had the evidence been offered seasonably, it would have been competent upon the issue of the plaintiff's due care in relying upon the assurance of safety given him by the superintendent and in giving up his own investigation when directed to go with his superior.

Where a person's state of mind is material to an issue on trial he may testify about it himself.

TORT for personal injuries sustained by the plaintiff while at work in the lumber yard of the defendant at Holyoke, by reason of part of a pile of lumber falling upon him. Writ dated August 11, 1906.

In the Superior Court the case was tried before *King,* J. The facts which a jury might have found upon the evidence are

stated in the opinion. At the close of the evidence, the judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

The only exception relating to evidence which was argued by the plaintiff, referred to in the opinion, was as follows: It appeared that the plaintiff, on seeing the particular pile of lumber which afterwards fell on him, and which then was several feet away, said, " That pile is pretty high." Whereupon one Guy, the defendant's superintendent, said, " Never mind that pile, it is all right and safe. Come; I will show you some other pile," and thereupon the plaintiff did not examine the pile, and went with Guy. On the plaintiff's direct examination, he was asked by his counsel, " Now, Mr. Carriere, when you started, as I understand you, when you were talking with Mr. Guy you say you started toward the pile? " He answered " Yes." His counsel then asked the question, " Will you tell us why? " On objection by the defendant the question was excluded, and the plaintiff excepted.

Later in the trial, the plaintiff was recalled, when another exception was taken as follows: Q. (By Mr. Stapleton.) " There is just one question more I wish to ask you, Mr. Carriere." Mr. Green. " I object to this. The night has intervened, and I don't think he ought to be allowed to come in to state a mental condition, which I understand from my brother is what he wishes to inquire about." The Judge. " I should be inclined to think this is pretty close to the line. It is a point upon which, of course, the defendant cannot be prepared to meet you. The objection is sustained." Mr. Stapleton. " The question I wish to offer is why he started toward the pile that fell on him after he spoke to Mr. Guy, as testified in his direct examination. The answer I expect is, ' To see if it was a good pile.' I would like to make a statement that this matter was accidentally omitted in the direct examination." Mr. Green. " I object to it, first, on the ground that it is incompetent; second, on the ground that it is out of order." The evidence was excluded, and the plaintiff excepted.

*R. P. Stapleton*, for the plaintiff.

*A. L. Green*, for the defendant.

RUGG, J. The plaintiff had worked for the defendant fifteen years in its lumber yard, piling lumber of all kinds. The evi-

dence was conflicting, but a jury might have found that in the forenoon of June 11, 1906, the plaintiff and another workman were directed by one Guy, a superintendent within the employers' liability act, one of whose duties was to see that the lumber was properly piled, to come with him and be shown where to pile lumber; that there was a long shed covered with a roof but open on the sides and divided into spaces, called bays, for the piling of various grades of lumber; that they came to a bay in which were three tiers of planks, and, there being more room in it, Guy said, " You got to pile on that bay, too." To which the plaintiff replied, " That pile is pretty high," and being then several feet away started toward the pile, whereupon Guy said, " Never mind that pile, it is all right and safe. Come; I will show you some other pile." Thereupon the plaintiff did not examine the pile, but went with Guy, and was engaged about his work elsewhere until after noon, when he returned to the bay, as to which the conversation of the morning had occurred, to pile lumber in it, and on going into it with a plank, one tier of lumber about nine feet in height fell on him, causing injuries; that it was customary in the defendant's yard, when tiers were piled as high as this in a bay only partially filled, to use cross-pieces to bind the tiers together, and that there were no cross-pieces on the tiers in this bay ; that lumber had been in this bay for several weeks, and some had been taken out a week before, and there was nothing to show that any had been taken out or put in since; that men were at work about the yard from time to time straightening up piles of lumber so that they would be safe.

There were sufficient circumstances from which the negligence of the defendant's superintendent might have been inferred. The defendant was bound generally to furnish a reasonably safe place for the plaintiff to work, and the duty of its superintendent may have been found to include a general inspection of the piles of lumber to see that they were safe and continued to remain so. His assurance to the plaintiff that the pile was safe was unwarranted by the facts, as he might readily have discovered from examination, which would have revealed a high tier of planks without the usual ties to bind it to the other tiers for support. This fact, together with the fall of the pile a few

hours later, with no intervening change in its condition shown, were enough to support the conclusion that its state in the morning was such as to indicate danger to the trained eye of one who knew that, when he gave assurance of safety, there went with it not merely the expression of opinion from one equal to another equal, but the authority of one in a higher position who had a right to compel obedience from one in lower position. *Lammi* v. *Milford Pink Granite Quarries,* 196 Mass. 336. *Chiappini* v. *Fitzgerald,* 191 Mass. 598. *Gile* v. *J. W. Bishop Co.* 184 Mass. 413.

A more difficult question arises as to the due care of the plaintiff. He was an experienced man, and knew the fluctuations in the quantity of lumber in the various bays and the likelihood that they might become dangerous, and that men were frequently at work straightening them up. In the absence of any information from the superintendent, it was his duty to inspect with care each bay before going into it, in order to ascertain whether it was safe. He knew all the hazards of the work as well as anybody, and commonly, if harm came to him, it would have been due either to the ordinary risks of the business, which by his contract of employment he assumed, or to his own failure to look out for himself. But the circumstances on the day of the accident might have been found to be so different as to establish for him the care of a reasonably prudent man without all these precautions. The evidence that he was being directed where to pile lumber, not where to work in straightening it, and, on suggesting that the place was in close proximity to a high tier, was told by the superintendent that it was safe, and ordered to proceed to another place, might have justified a reliance upon the word of his superior and a relaxation of the personal observation otherwise required of him. Even if he thought that the pile was so high that it was liable to fall, he still may have been excused in yielding somewhat of his own view and accepting that of the representative of the defendant, especially in face of his ignorance as to whether the tier was braced. An assurance of safety by a superintendent has usually been held to be such a consideration as to render the due care of a workman relying upon it a question of fact. While this may not be a universal rule (see *Lavelle* v. *Dunn-Green Leather Co.* 194

Mass. 294), the present case is such that the count alleging negligence of the defendant's superintendent should have been submitted to the jury.    That the assurance was not instantly acted upon is rather a detail to be weighed with all the other evidence than a decisive factor against the plaintiff.    *McKee* v. *Tourtellotte,* 167 Mass. 69.    *Burgess* v. *Davis Sulphur Ore Co.* 165 Mass. 71.    *O'Brien* v. *Nute-Hallett Co.* 177 Mass. 422.    *Lord* v. *Wakefield,* 185 Mass. 214.    *Mahoney* v. *Bay State Pink Granite Co.* 184 Mass. 287.    *Berube* v. *Horton,* 199 Mass. 421.    *Denning* v. *Gould,* 157 Mass. 563.    *Anderson* v. *Duckworth,* 162 Mass. 251. *Malcolm* v. *Fuller,* 152 Mass. 160.    *Tanner* v. *New York, New Haven, & Hartford Railroad,* 180 Mass. 572.    *Cavagnaro* v. *Clark,* 171 Mass. 359.    The authorities relied upon by the defendant in this regard are distinguishable.    In *Davis* v. *Forbes,* 171 Mass. 548, the plaintiff did not rely upon the assurance but upon an experiment made before his own eyes.    In *Lowcock* v. *Franklin Paper Co.* 169 Mass. 313, the assurance was not directed to the particular situation which caused the injury.    In *Whittaker* v. *Bent,* 167 Mass. 588, the assurance was a colloquialism between fellow workmen.

The only exception as to evidence argued by the plaintiff cannot be sustained.    The question, when first asked and excluded, was not accompanied by an offer of proof, and when the offer was made after the defendant's case was closed might have been excluded as matter of discretion.    But, if it had been seasonably proffered, evidence was competent to the effect that during the crucial conversation with the defendant's superintendent, after having said the pile was pretty high, the plaintiff started toward the bin " to see if it was a good pile."    It bore upon the issue of the plaintiff's due care in relying upon the assurance of safety given him by the superintendent, and in giving up his own investigation when directed to go with his superior. It was in substance testimony as to the intent accompanying the act of entering the bin.    Where one's state of mind is important, the person may himself testify about it.    *Toole* v. *Crafts,* 193 Mass. 110.    *Sherman* v. *Sherman* , 193 Mass. 400.

*Exceptions sustained.*