HANNAH CARROLL, administratrix, *vs.* FORE RIVER SHIP BUILDING COMPANY.

Norfolk.    January 17, 1911. — March 3, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & RUGG, JJ.

*Negligence,* Employer's liability.

In an action by an administrator against the employer of the plaintiff's intestate, for causing his conscious suffering and death by reason of a heavy iron porter bar striking him or falling upon him when a steam hammer crushed a brass casting, in one of the holes of which the bar had been left protruding, it was conceded that there was evidence of due care on the part of the intestate, and there was evidence that an acting superintendent of the defendant in charge of the work gave an order which caused the hammer to descend before the bar had been removed from the casting, knowing that there was danger to the workmen in crushing the casting before the bar was removed. The foreman testified that he intended to follow the usual and safer way and to have the hammer come down only far enough to hold the casting in place without resting the weight of the hammer upon it. It appeared that the order he gave was "Hold it, Billy," Billy being the operator of the hammer, and there was evidence that the words "hold it" meant that the hammer should be left or held down after it had been lowered upon the metal or casting to be crushed. It also appeared that the casting had been made brittle by subjecting it to great heat in the usual manner, and that when this order was given "the hammer descended down slowly until it came on the end of the casting and then in a little while the casting all crumbled away," and the accident happened. *Held,* that the

giving by the acting superintendent of this order, the possible execution of which under the circumstances he must have known might be attended with grave danger to the defendant's workmen under his command, would justify a finding that he was negligent.

TORT by the administratrix of the estate of Edward J. Carroll, late of Weymouth, for the conscious suffering and death of the plaintiff's intestate on August 22, 1908, when he was employed as a workman in the forge room of the defendant's shipbuilding works at Quincy, alleged to have been caused by an iron porter bar weighing about nine hundred and ninety pounds striking or falling upon the intestate when a steam hammer crushed a brass casting, in one of the holes of which the bar had been left protruding, the different counts of the declaration being described in the opinion.   Writ dated January 18, 1909.

In the Superior Court the case was tried before *Crosby*, J. The substance of the evidence is described in the opinion.   At the close of the evidence the defendant asked the judge to rule that the plaintiff could not recover.   The defendant also asked for certain instructions to the jury, among which was the following:

"9.  If you find that Mr. O'Brien [the operator of the steam hammer] knew that the method of doing the work under the conditions existing at the time was improper, and yet that he carried out this method because of the orders of Mr. Bell [the foreman of the forge room,] the plaintiff cannot recover."

It appeared that the order given by Bell was "Hold it, Billy," and that "Billy" was O'Brien, who was operating the levers of the hammer.   There was testimony that the words "hold it" had a special significance and meant that the hammer should be left or held down after it had been lowered upon the metal or casting, and that when this order was given "the hammer descended down slowly until it came on the end of the casting and then in a little while the casting all crumbled away."

The judge refused to rule that the plaintiff could not recover. He also refused to give the ninth instruction requested by the defendant, which is quoted above.   Among other instructions he gave the following:

"If you find that the negligence of Mr. O'Brien caused the accident, the plaintiff cannot recover.   That is, provided you find that the order given by Bell was not a negligent order.

" If you find that the order of Mr. Bell was a proper order and that the method of doing the work was proper and the accident happened through the negligence of Mr. O'Brien in carrying out the method, the plaintiff cannot recover.

" If you find that the accident happened through Mr. O'Brien's not carrying out the orders given him by Mr. Bell, the plaintiff cannot recover, if the order so given was a proper and not a negligent order."

The jury returned a verdict for the plaintiff in the sum of $4,850 ; and the defendant alleged exceptions.

*J. Lowell & J. A. Lowell,* for the defendant.

*F. G. Hayes,* for the plaintiff.

BRALEY, J.  The plaintiff's intestate, while employed by the defendant, received severe injuries causing his death after a considerable period of conscious suffering.  Of the five counts of the declaration, the first at common law was waived, the third, fourth and fifth are immaterial to the exceptions because of the rulings in the defendant's favor, and the case went to the jury upon the second and third counts charging under the statute negligence, in the performance of his duties, of some person entrusted by the defendant with superintendence.  R. L. c. 106, §§ 71, 72, as amended by St. of 1906, c. 370, now by codification St. of 1909, c. 514, §§ 127, 128.  *Bartley v. Boston & Northern Street Railway,* 198 Mass. 163, 168.

The defendant concedes, that there was evidence for the jury as to the due care of the intestate, and that one Bell, the foreman of the forge room, was an acting superintendent, but contends that there was no evidence which warranted a finding that he was negligent.  *Murphy v. New York, New Haven, & Hartford Railroad,* 187 Mass. 18.  We are unable to adopt this view. The intestate with other workmen was engaged at the time of the accident in melting and breaking large brass castings. In the performance of the work when a casting had been heated to a temperature sufficient to make it brittle it was withdrawn and placed upon the die or anvil of a steam hammer and crushed. A casting having been heated to the necessary degree, the foreman ordered its removal to the hammer.  The men thereupon inserted into an open space in the casting the end of a porter bar suspended by a chain from a movable crane.  By interposing

their weight, and bearing down at the other end, to which a long piece of pipe had been attached, the leverage was sufficient to lift out the casting, when by aid of the crane it was swung around and placed under the hammer. It was after this had been done and while the men were still at the porter bar with the intestate as the " end man," that the foreman, who the jury could find knew of their position, ordered the operator to lower the hammer. The hammer weighing seventeen tons was at once lowered until it rested upon or struck the casting, which had become so fragile from the intense heat that it instantly crumbled, and the force of the impact or weight of the hammer falling upon the porter bar caused it so to vibrate, or " bound and rebound," as to break the chain and then to either strike or fall upon the intestate. It is plain from the details of the operation, that the accident could not have happened if the porter bar had been removed after the casting had been placed upon the anvil, and the plaintiff's experts, who were familiar with the proper method of reducing the casting, all agreed that this should have been done before the hammer descended. The testimony of the foreman warranted the inference that he not only knew that the casting must be heated until it was brittle or it could not be crushed, but also was familiar with the proper process. If the bar was not removed the danger to the men was obvious, and the present case is not an instance where, until the accident, there was no reasonable ground to anticipate what befell the intestate. The foreman testified, that he intended to follow the usual and safer way, and only to have the hammer come down sufficiently far to hold the casting in place, without resting the weight of the hammer upon it. But the effect of the order which he gave was susceptible of an entirely different interpretation upon the evidence, and was for the jury to determine. To give an order, the possible execution of which under such circumstances he must have known from his experience, if he had used ordinary precautions, might be attended with grave danger to the defendant's employees under his command and power of control, would justify a conclusion by the jury that he was negligent. *Meagher* v. *Crawford Laundry Machinery Co.* 187 Mass. 586. *Robertson* v. *Hersey*, 198 Mass. 528. *Connolly* v. *Booth*, 198 Mass. 577. *Igo* v. *Boston Elevated Railway*, 204 Mass. 197.

If his negligence was established, there is no question that the plaintiff had made out a case, and the defendant's requests so far as they were not given, were rightly denied.

*Exceptions overruled.*