ANDREA POLVERE, administrator, *vs.* HUGH NAWN CONTRACTING COMPANY.

Suffolk.   December 13, 1912. — June 16, 1913.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Negligence,* Employer's liability.   *Evidence,* Declarations of deceased persons.   *Practice, Civil,* Amendment.

If a workman, employed in removing a hill or bank of sand and gravel, is working on the slope loosening the sand with a pole, when the superintendent under whom he is working is informed that there is an overhang at the top of the slope which is likely to fall unless broken up and that it is not safe to work beneath it, but the superintendent replies that he does not think it necessary to break up the overhang and that the place is safe enough, and the same informant then tells the workman that he does not think it safe for him to work where he is working, but also tells him that the superintendent said that he did not think that the overhang would come down and said that it would not come down, and thereupon the workman, relying on the assurance of the superintendent thus reported to him, continues to work on the slope and the overhang

breaks off and produces an avalanche which injures the workman and causes his death after conscious suffering, the employer is not liable at common law to the administrator of the estate of the workman for the suffering caused by his injuries, because at common law the superintendent was a fellow servant of the injured workman, but, in an action under the employers' liability act for causing the death of the workman, there is evidence that the death was caused by the negligence of a superintendent of the defendant.

In an action under the employers' liability act for causing the death of a workman of the defendant, it appeared that the deceased workman had a father and mother in Italy who were "pretty old" and that the workman had contributed to their support by sending them money, that he had been in this country for eighteen months and was killed in the month of December. A witness, against the defendant's exception, was allowed to testify that the workman said to him that his parents were in need of the money because they did not get any money from the crops, that their farm was bad, and that "the crops had come and there was not enough to pay the interest for hiring the place." *Held,* that the crops referred to must have been those after the deceased workman had left Italy and therefore that his declaration concerning them could not have been made upon his personal knowledge and should have been excluded under R. L. c. 175, § 66.

Under R. L. c. 175, § 66, a declaration of a deceased workman, who had come to this country eighteen months before the accident that caused his death, that his elderly parents, whom he left in the country of his birth, were in need of the money that he sent to them from his wages earned here, may be found to have been based on facts known to the declarant before he left the foreign country and thus to have been made upon his personal knowledge.

In an action by an administrator for causing the death of the plaintiff's intestate, where the allegations of the declaration warranted a finding that the cause of action relied on by the plaintiff when the action was commenced was under R. L. c. 106, § 72, and had been misdescribed, the allowance under R. L. c. 173, §§ 48, 121, of an amendment completing the statement of that cause of action is conclusive evidence of the identity of the cause of action.

TORT by the administrator of the estate of Donato Polvere against the employer of the plaintiff's intestate, with two counts, the first at common law for personal injuries sustained by the intestate on December 1, 1908, and the second under the employers' liability act for causing his death by the injuries. The allegations added to the second count by the amendment mentioned in the opinion were, that the death of the intestate was not instantaneous and was preceded by conscious suffering, and that at the time of his death he had next of kin, a father and mother named, who were dependent on his wages for support and were living when the action was brought. Writ dated July 14, 1909.

In the Superior Court the case was tried before *Pratt,* J. The facts which could have been found upon the evidence are stated

in the opinion. At the close of the evidence the defendant asked the judge to make the following rulings:

"1. Upon all the evidence and the pleadings in the case, the plaintiff is not entitled to recover.

"2. Upon all the evidence, the plaintiff is not entitled to recover under the first count of his declaration.

"3. Upon all the evidence, the plaintiff is not entitled to recover under the second count of his declaration."

"7. Under the second count of the plaintiff's declaration, the plaintiff is not entitled to recover damages for the death of the plaintiff's intestate."

The judge refused to make any of these rulings, and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $4,500, of which they apportioned $1,500 on the first count for conscious suffering, and $3,000 on the second count for causing death. The defendant alleged exceptions.

The case was submitted on briefs.

*E. C. Stone,* for the defendant.

*J. E. Crowley & W. R. Buckminster,* for the plaintiff.

LORING, J. The amended declaration in this action contained two counts, one at common law for bodily suffering and the other under the employers' liability act for the death of the plaintiff's intestate.

The defendant was engaged in the work of taking down and carrying away a bank or hill of sand and gravel. At the foot of the slope of the hill there was a pit or hole some twenty-five feet long, twelve feet wide and four feet deep. In this pit were two buckets three feet deep and three feet wide. Two men with long poles stood on the slope of the hill to loosen the sand and gravel which thus set in motion ran down into and filled the buckets. The buckets were then hooked on to a block running on a cable (as we understand the bill of exceptions) and were pulled across to the railroad where they were dumped into cars and carried away. On the morning in question, while the intestate was on the slope, an avalanche of sand and gravel carried the intestate down the slope on to one of the buckets. One of his legs was caught between the bail of the bucket and the bucket itself, and before he could extricate himself he was covered with sand and died of suffocation.

The jury were warranted in finding that this accident was caused through the negligence of one Connors, who was admitted by the defendant to be a superintendent within the meaning of the employers' liability act. The negligence (which the jury were warranted in finding) consisted in this: Early in the morning of the day of the accident one of the gang loading the bucket, which the intestate was not at work upon, went on top of the hill with a sledge hammer and knocked down a frozen four-foot overhang at the top of the slope. He then walked along the top to the other end of the slope, being the end where the plaintiff's gang was at work, and found a crack about an inch wide, some five or six feet long, and some four feet back from the edge of the slope. The witness then called to Connors the superintendent that there was a crack at that end of the slope, and that the "overhang . . . ought to be broken the same as I broke my end," and that it was not safe to work underneath it. To this Connors answered that he did not think it was necessary, that it was safe enough. At this time the intestate was at work on the slope below the overhang just spoken of, loosening the sand with a pole. The talk between the witness and Connors was in English and the intestate (an Italian) did not understand English. Thereupon the witness told the intestate in Italian that he (the witness) did not think it safe for him (the intestate) to work where he was working, but that Connors "did not think it [the overhang] would come down; " that Connors "said that it would not come down." The overhang did break off as the witness said it would, and caused the avalanche which killed the intestate.

On this evidence the plaintiff was not entitled to recover on the common law count. At common law Connors was a fellow servant. On the plaintiff's evidence the intestate was an experienced workman, having been at work on this bank for eighteen months. He had been told of the conditions which might make the place where he was at work dangerous and chose to continue his work in reliance upon Connors. In this respect the case differs from *Gettins* v. *Kelley*, 212 Mass. 171. The assurance of safety in *McKee* v. *Tourtellotte*, 167 Mass. 69, was given by the defendant himself, while in the case at bar it was given by a fellow servant. *Fitzsimmons* v. *Taunton*, 160 Mass. 223, was the

case of the caving in of a trench where the jury could have found
that the defendant had notice of the danger and the plaintiff did
not. We find nothing in the other cases relied on by the plain-
tiff in this connection which requires mention.

Judgment for the defendant should be entered under the
statute on the first count.

But this evidence did make out a case under the employers'
liability act on the part of a superintendent. See in this con-
nection *Carriere* v. *Merrick Lumber Co.* 203 Mass. 322; *Gettins* v.
*Kelley,* 212 Mass. 171. The third and seventh rulings asked for
were rightly refused.

There was error, however, in the admission of some of the
declarations of the intestate which were admitted under R. L.
c. 175, § 66. It had appeared from evidence introduced by the
plaintiff that the intestate had a father and mother in Italy
who were "pretty old," and that the intestate had contributed to
their support by sending them money. It also had appeared that
the intestate came to this country eighteen months before the
accident and had been continuously in the defendant's employ
since his arrival.

On cross-examination of one of the defendant's witnesses
the counsel for the plaintiff, against the objection and exception
of the defendant, was allowed to ask why the intestate said
that he sent money to his parents, and he answered that he (the
intestate) said "they were in need of it;" and in answer to the
further question "Did he say why they needed it," he was al-
lowed to testify: "They did not get any rental from the crops
and they needed the money to support themselves;" and to fur-
ther questions, that he said that their farm was bad; that "the
crops had come and there was not enough to pay the interest for
hiring the place."

As we have already said it appeared in the evidence that the
intestate came to this country in June, 1907, and remained here
until he was killed on December 1, 1908. Unless the crops referred
to in his declarations (admitted in evidence against the defendant's
objection) were the crops of 1906 or earlier years, he could not
have had personal knowledge of their failure. Manifestly the
crops referred to in the declaration of the intestate were not the
crops of 1906 and earlier years. These declarations therefore could

not have been admitted even under R. L. c. 175, § 66, and the exception to their admission must be sustained.

As the case must go back for a new trial we will deal with matters argued here which are likely to arise there.

1. The other declarations of the intestate were properly admitted. The fact that his parents were in need of his money might well be found to rest on facts known to the intestate before he left Italy.

2. In the original second count there was an allegation that the intestate "received grievous personal injuries so that he afterwards died," and an allegation that "due notice of the time, place and cause of said injury was given to the defendant." These allegations warranted a finding that the cause of action relied on by the plaintiff when the action was commenced was one under R. L. c. 106, § 72, which had been misdescribed, and the amendment was properly allowed. R. L. c. 173, §§ 48, 121. And, the finding being warranted, the allowance of the amendment is conclusive evidence that the cause of action relied on originally is the same as that set forth in the amendment. *Tracy* v. *Boston & Northern Street Railway,* 204 Mass. 13.

Judgment must be entered for the defendant on the first count and a new trial granted on the second count.

*So ordered.*