FLORENCE J. MacLELLAN & another *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    January 13, 1915. — April 14, 1915.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Negligence*, Employer's liability.    *Evidence*, To prove ownership, Materiality. *Practice, Civil*, Exceptions.

An action under the employers' liability act against a street railway company for the death without conscious suffering of a lineman employed by the defendant alleged to have been caused by a defect in the ways, works, appliances and mechanism used in connection with the defendant's business cannot be maintained on those allegations where it appears that the cause of the death was the breaking of a guy pole while the deceased was working upon it and the evidence does not warrant a finding that the pole belonged to the defendant.

In such an action, a finding that the pole belonged to the defendant is not warranted where the only evidence on that subject was testimony of a witness for the plaintiff that it was a "guy stub" supporting "Edison poles" and that the defendant had no wires upon it, an affirmative reply of the same witness to a question, whether a guy wire which the witness and fellow workmen were taking from the pole was a guy running to the Edison pole and evidence tending to show that two days after the accident the broken stub pole was put on a team of the defendant and carried away, although, in the absence of the other evidence, evidence tending to show merely that after the pole was broken it was carried away on a team of the defendant might have warranted a finding that the pole was its property.

A foreman in charge of a number of linemen of a street railway company (who is admitted to be a superintendent of the defendant within the meaning of the employers' liability act), in giving to a lineman of sixteen years' experience an order not in itself negligent to go upon a certain wooden pole called a "guy stub" pole to remove a guy from it, is under no duty first to inspect the pole and to give a warning or instructions as to how the work should be done; and, if he

fails to make such inspection and to give any such warning or instruction and the employee is injured by the breaking of the pole because of a decayed condition, the company cannot be held liable for the injuries by reason of negligence on the part of the superintendent, whether the company owned the pole or not.

In an action under the employers' liability act against an employer for causing the death of an employee, where it is alleged that the death was caused by a failure of a superintendent of the defendant to give instructions to the employee as to a proper method in which certain work should be done and that therefore the employee used a wrong method and was injured, and where it appears that the employee was so experienced that the superintendent was under no duty to give him instructions, a witness for the plaintiff, qualified as an expert, need not be permitted to testify as to what was a proper method for the employee to use, because such evidence is immaterial and properly may be excluded. In this case the witness was permitted to state that the method adopted by the employee was improper, and it therefore was held that, if the evidence as to the proper method was competent for any purpose, the plaintiff was not harmed by its exclusion.

CROSBY, J. The substituted declaration in this case contains two counts under the employers' liability act. One alleges a defect in the ways, works, appliances and mechanism used in connection with the business of the defendant, and the other alleges the negligence of a person in the service of the employer, whose sole or principal duty was that of superintendence.

The plaintiffs are daughters of Alexander MacLellan and seek to recover for his instantaneous death while in the employ of the defendant.

It appeared that the deceased was an experienced lineman, who had worked as such for various electric light companies and a telephone company for sixteen or eighteen years before his death; that most of his work had been on electric light and telephone poles, and that he was not a ground man, so called, but his principal work had been upon such poles.

On the day of the accident the defendant was changing its wires to a new location on Southampton Street in Boston. The deceased and some other linemen, in charge of one Scanlon (who it was admitted was a superintendent under the employers' liability act), were present, and Scanlon told the deceased and one Barnes to move a guy wire, which ran from a pole referred to in the record as "D," and to attach it to a telephone pole on the southerly side of the street a few feet away from pole "D." This pole "D" was called a "stub." This "stub" pole "D" was about

sixteen feet tall above the ground, and ten inches thick at the butt. Scanlon gave no instructions as to how the work should be done. Barnes and the deceased then undertook to remove the guy wire. Barnes placed a ladder against the "stub," climbed it, carrying a block and falls, and attached it to the guy wire; then he climbed down and set up the falls, making them fast to a fence. He then climbed the ladder again, taking with him bolt cutters, and after cutting the guy descended to the ground and slacked off the falls. While Barnes was engaged in pulling the guy wire down from the return wires where it had lodged, the deceased climbed the ladder to remove from the "stub" the "stopper," so called, which attached the block and falls to the "stub." Immediately afterwards the "stub" or pole broke off two or three inches below the ground, which was frozen, and the deceased was thrown over a fence on to some rocks, and was instantly killed.

There was evidence to show that where the pole had broken below the surface of the ground it was decayed. The witness Barnes testified that the stub "D," upon which MacLellan was when he was killed, was a guy stub supporting Edison poles, and that the defendant company had no wires upon it. After the witness Barnes had so testified, the presiding judge * stated, "That was an Edison guy?" in reply to which the counsel for the defendant said, "Edison guy." The following question was then put to the witness: "This was a guy running to the Edison pole?" Answer, "Yes, sir." The witness further testified that upon the following Monday (the accident occurred on Saturday, March, 2, 1912) he cut the back guy from the stub pole "D" and put the pole on a team of the defendant and it was carried away. This is all the evidence upon the question of the ownership of stub pole "D." It falls far short of justifying a finding that the pole belonged to the defendant, although if the only evidence upon this question had been that that pole was carried away by the defendant an inference perhaps might have been warranted that the pole was its property. As there is no evidence to warrant a finding that the defendant was the owner of the pole "D," the plaintiffs are not entitled to recover under the first count.

---

* The case was tried before *White*, J., who ordered a verdict for the defendant and reported the case for determination by this court.

The plaintiffs contend that the order of the defendant's superintendent Scanlon to the deceased and to Barnes to remove the guy wire from the pole without instructions as to how it should be done was a negligent order. The undisputed evidence shows that the deceased was a man of large experience in work of this kind. He had worked upon poles in the construction and repair of electric lines for several years. It must have been obvious to him that wooden poles used for supporting wires, after having been set for a long time in the ground, would become decayed and defective. Indeed, it would seem to be a matter of common knowledge that there would be such deterioration. He must have known that it was practicable to test such poles before climbing them, to ascertain whether they were safe or otherwise. There was no evidence to show that the defendant made any inspection or test of this pole to ascertain whether it was safe before the deceased was set to work upon it, or that the deceased relied upon any such inspection or test. Nor was there any evidence to show that there was any practice on the part of the defendant or its superintendent to make such inspection. The deceased must have known that no inspection of the pole in question had been made by his employer. He could judge as well as anybody whether it was safe to go upon it without examination. It cannot be found that the order of Scanlon was any assurance to him, under the circumstances, that the pole was safe for him to work upon. As between the plaintiffs and the defendant, the defendant was under no obligation to inspect poles owned by it to see whether they were decayed, and there is therefore no evidence of negligence on the part of the defendant; and this is equally true where the pole is not owned by the employer. *McIsaac* v. *Northampton Electric Lighting Co.* 172 Mass. 89.

Nor can it be found that Scanlon was negligent in failing to include in his order to cut the guy wire directions as to how it should be done, because from his experience the deceased must have known the proper way in which to do the work and needed no instructions as to the manner of its performance. There was no evidence to warrant a finding that the order of Scanlon was a negligent order. *Tanner* v. *New York, New Haven, & Hartford Railroad*, 180 Mass. 572.

The case is plainly distinguishable from *McCoy* v. *Westborough*,

172 Mass. 504; *Chisholm* v. *New England Telephone & Telegraph Co.* 185 Mass. 82; *Carriere* v. *Merrick Lumber Co.* 203 Mass. 322; *Carroll* v. *Fore River Ship Building Co.* 208 Mass. 296.

As there is no evidence to show that the defendant was negligent we need not consider whether the deceased was in the exercise of due care.

One Garrick, a witness called by the plaintiffs as an expert, was asked as to the proper method of testing a pole when the ground was frozen. He also was asked as to what order should be given to a lineman to change a guy, and as to whether certain orders recited in the questions would be proper. These questions were excluded by the presiding judge as immaterial, but the witness was permitted to testify that the method adopted by the deceased and his fellow workmen in changing the guy was improper. In view of this testimony and taking into consideration the long experience of the deceased in doing similar work, we are of opinion that the evidence was excluded rightly. If for any purpose it could have been considered competent, we are of opinion that its exclusion did not affect injuriously any substantial rights of the plaintiffs. St. 1913, c. 716, § 1.

The exceptions to the exclusion of evidence cannot be sustained. In accordance with the terms of the report judgment is to be entered for the defendant on the verdict.

*So ordered.*

*J. C. Woodman,* (*C. P. Hanlon* with him,) for the plaintiffs.
*F. M. Ives,* for the defendant.